781 F.2d 963
 54 USLW 2444, 33 Cont.Cas.Fed. (CCH) 74,228
 CHEMUNG COUNTY, Plaintiff-Appellee,
v.
Elizabeth H. DOLE, Secretary of Transportation, Department
of Transportation; Donald D. Engen, Administrator, Federal
Aviation Administration; A.P. Bona, Jr., Facility Project
Officer, Automated Flight Service Station; Federal Aviation
Administration; and Department of Transportation,
Defendants-Appellees,
Niagara Frontier Transportation Authority,
Intervenor-Defendant-Appellant.
 No. 392, Docket 85-6319.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 3, 1985.
Decided Jan. 23, 1986.
 
 Richard F. Griffin, Buffalo, N.Y. (Gary F. Kotaska, James D. Donathen, Allithea E. Lango, Dominic J. Terranova, Moot & Sprague, Buffalo, N.Y., of counsel), for intervenor defendant-appellant Niagara Frontier Transp. Authority.
 John F. O'Mara, Elmira, N.Y. (David E. Sellinger, Lauryn Guttenplan Grant, Davidson & O'Mara, P.C., Elmira, N.Y., of counsel), Judith Richards Hope, Washington, D.C. (Paul, Hastings, Janofsky & Walker, Washington, D.C., of counsel), for plaintiff-appellee Chemung County.
 Theron A. Gray, Asst. Chief Counsel to U.S. Atty. for W.D.N.Y., Rochester, N.Y. (Rosemary G. Roberts, Asst. U.S. Atty., Patricia A. McNall, F.A.A., Salvatore R. Martoche, U.S. Atty. for W.D.N.Y., Rochester, N.Y., of counsel), for defendants-appellees.
 Before NEWMAN, CARDAMONE and MINER, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 The novel issue presented on this expedited appeal is whether a district court has subject matter jurisdiction to grant equitable relief to prevent a government agency from denying a successful bidder a government contract. Serious questions are raised regarding the jurisdiction of the district court to review government procurement processes and the court's power to intercede on behalf of parties claiming to have been injured by the arbitrary and capricious actions of government agencies that fail to follow their own regulations. In a previous decision we dealt comprehensively with these questions. The difficulty arises because the rule we set forth earlier does not specifically cover the precise factual situation posed by this case--though the rationale for adopting that rule does apply. To ignore the reasons why a rule exists drains its precedence of meaning, and the rule becomes like a pitcher without water--an empty vessel.
 
 
 2
 * Niagara Frontier Transportation Authority (NFTA) appeals from a July 29, 1985 Decision and Order of the United States District Court for the Western District of New York (Telesca, J.), and from that court's further order of August 26, 1985. These orders granted summary judgment declaring that a government contract was properly awarded to Chemung County (Chemung).
 
 
 3
 The Federal Aviation Administration (FAA) issued on December 1, 1982 a solicitation for offers (SFO or solicitation) for an Automated Flight Service Station (AFSS or flight station) serving the Western New York-Northwestern Pennsylvania Flight Plan Area. The proposed AFSS is designed to consolidate the flight service stations in that area into a single location. This particular flight station is a part of the FAA's overall plan to consolidate over 300 existing flight stations into approximately 61 AFSS's around the country. On the same day the FAA issued its solicitation, its Eastern Regional Contracting Officer explained to potential bidders or offerors the procedures for preparing offers and the criteria by which they would be judged. Bidders were to provide space in a proposed location for the FAA to lease on an annual basis, with the FAA retaining an option to renew (each year up to twenty years). Offerors were to itemize 20 year life cycle costs; the FAA would also consider the costs of certain other factors relating to the construction and operation of the flight station, as to which offerors were not requested to submit estimates. The solicitation did not specifically address the question of telecommunications costs or the manner in which the FAA would compute such costs.
 
 
 4
 Eleven bids were received. The time for submitting the "best and final" offer elapsed on January 31, 1984. Under the then applicable statute, 41 U.S.C. Sec. 253(b) (1982), the FAA was required to award its contracts to bidders submitting the bid "most advantageous to the Government, prices and other factors considered...." Chemung's bid of $7,451,716 to build and lease a flight station in Elmira, New York was the most advantageous bid. NFTA's bid of $7,526,091 to build and lease a flight station in Buffalo, New York was second. The FAA accepted Chemung's offer on November 30, 1984, but due to subsequent developments the FAA never executed a lease with Chemung. On December 4, 1984 the FAA notified the NFTA by letter, pursuant to statutory requirements, that Chemung had been selected. 48 C.F.R. Sec. 15.1001(c) (1984). Enclosed in the letter was a summary of the FAA's estimated life cycle costs for all offerors. This indicated that the NFTA had a telecommunications cost advantage over Chemung of $10,000. Because the NFTA believed it would enjoy an even greater telecommunications advantage--due to the large number of pilots residing in the Buffalo area who could utilize the services of the flight station within the local telephone calling area--it concluded that an error had occurred in the evaluation of its offer. The NFTA then contacted Congressmen representing the Buffalo area who, in turn, requested the General Accounting Office (GAO) to investigate the FAA decision.
 
 
 5
 The GAO investigation revealed that the Eastern Regional Office of the FAA had not followed the FAA's national guidelines for computing flight station telecommunications costs. In October 1983, the FAA adopted a national policy for the evaluation of telecommunications costs when assessing offers to construct and lease flight stations. These guidelines applied to "all flight plan areas that have not been selected and announced, regardless of where they are in the selection process." The cost of telecommunications services was to be computed by employing "the most economical mix of lines." In view of the FAA's failure to comply with these guidelines, Buffalo Congressmen requested the FAA to re-evaluate the flight station bids.
 
 
 6
 During January 1985 FAA officials refused to meet with Chemung's representatives to discuss construction of the Elmira facility. Then, on February 19, 1985 the FAA notified Chemung that due to FAA errors in calculating telecommunications costs, all proposals for the AFSS would be re-evaluated. After re-examining its cost calculations, the FAA concluded that, based on an anticipated major rate increase by the New York Telephone Company, its initial calculations based on all WATS lines for pilot services rather than a mix of services were correct. Hence, Chemung remained the successful bidder. The GAO then instructed the FAA to re-examine its calculations one more time. The parties disagree as to whether the re-examination was to be in light of the FAA's national guidelines or whether it was to include two new variables which Chemung argues were not part of the original solicitation: (1) figures compiled by the air traffic division containing revised estimates of the volume of traffic at Buffalo; and (2) figures based on services required for Syracuse, New York.
 
 
 7
 In April 1985 the FAA completed its second bid reevaluation and on May 8 FAA officials met with GAO officials who noted in a May 10 memorandum that they would inform the local Congressmen who had intervened on the NFTA's behalf that they had validated the FAA's methodology. On May 24 the FAA published a new report, which found that NFTA's bid was now lowest with a total 20-year discounted price of $6,329,369 and that Chemung was second with a total cost of $6,592,609. Consequently, the FAA announced on May 29 to all Eastern Region Flight Service Station Managers that Buffalo had been selected as the flight station site, and NFTA would be awarded the contract.
 
 
 8
 In a letter dated May 29th, the same day as the announcement, Chemung modified its bid by $1,160,600 over the 20-year life of the facility. When discounted at four percent, it resulted in a $489,773 reduction in Chemung's bid. Chemung submitted this amendment pursuant to Paragraph 27(C) of the solicitation which states that "a late modification of an otherwise successful offer which makes its terms more favorable to the government will be considered at anytime it is received and may be accepted." If this reduction is considered, Chemung's bid of $6,194,000 would be the lowest. A marginal notation inserted after May 29 on the FAA's May 24 report confirmed that Chemung was the low bidder "with proposed reduction."
 
 
 9
 On July 9, 1985 Chemung filed suit seeking declaratory and injunctive relief, and the following day the FAA's Regional Contracting Officer rejected Chemung's modification of its offer, stating, in relevant part:
 
 
 10
 When the FAA corrected the error [in its calculation of telecommunications costs for pilot services] and re-evaluated the offers received for this solicitation, it discovered that Chemung County is [sic] not the successful offeror. Since Chemung is [sic] not the successful offeror the FAA cannot consider Chemung County's proposed late modification.
 
 
 11
 This was the first notification Chemung received from the FAA advising it that it was no longer the successful bidder.
 
 
 12
 The district court held a hearing on July 22 and 23, 1985 on Chemung's motion for a preliminary injunction and on a cross-motion by the government seeking dismissal on jurisdictional grounds. As stated by the district court, Chemung sought "a declaratory judgment that the contract was properly awarded to Chemung County; an order in the nature of mandamus requiring defendants to execute the lease with Chemung County for the AFSS; and an injunction prohibiting the defendants from taking any action (such as awarding the contract to the NFTA) inconsistent with the award to Chemung County." At the conclusion of the hearing, counsel for Chemung and the government agreed that Chemung's preliminary injunction motion should be considered as a motion for summary judgment. The trial court's order of July 29, 1985 granted summary judgment to Chemung after notice to the then-existing parties to the litigation, but without notice to the NFTA of either the pendency of the lawsuit or of the pendency of the entry of a final order.
 
 
 13
 The district court concluded that it had jurisdiction to hear Chemung's complaint and found that a contract existed between the parties when the FAA accepted Chemung's bid on November 30, 1984. Even if the government failed to follow proper contracting procedures, this contract was not void ab initio. Therefore, the trial court continued, Chemung properly exercised its rights under Section 27(C) of the solicitation when it reduced its bid on May 29. Even though Paragraph 27(C) gave the FAA discretion to accept or reject Chemung's reduction, the district judge ruled that it was arbitrary and capricious of the FAA to reject Chemung's reduction when that made its bid the most advantageous to the government. With respect to the validity of the contract, the district court granted Chemung's motion for summary judgment, but denied the other relief sought "because defendants have given me no reason to believe that they will act in any manner contrary to this decision and order." After considering Chemung's proposed modification, the district court granted declaratory judgment in its favor finding Chemung to be the successful offeror under the solicitation.
 
 
 14
 On August 14, 1985 the NFTA moved to intervene, sought injunctive relief, and requested the district court to set aside its July 29, 1985 Decision and Order. On August 19, 1985 the district court heard oral argument on these motions, and on August 26, 1985, it orally granted the NFTA's intervention motion, but denied its motion to reopen and set aside the July 29 order. From the orders of July 29 and August 26, 1985 the NFTA appeals.
 
 II
 
 15
 The NFTA asserts that the district court lacked subject matter jurisdiction to entertain Chemung's suit because Chemung's alleged "contract" claim may only be brought in the federal court of claims. 28 U.S.C. Sec. 1346(a)(2) (1982) and 28 U.S.C. Sec. 1491(a)(1) (1982). The Contract Disputes Act (CDA) of 1978, 41 U.S.C. Sec. 601 et seq. (1982), amended the Tucker Act, 28 U.S.C. Sec. 1491 (1982), and removed district court jurisdiction over actions or claims against the United States, regardless of the amount in controversy, when founded upon an express or implied in fact contract with the federal government. 41 U.S.C. Sec. 609(A)(1). To determine the scope of the district court's authority to review the government procurement process and to grant post-award relief, we must begin with an examination of our decision in B.K. Instrument, Inc. v. United States, 715 F.2d 713 (2d Cir.1983), which the parties agree is the controlling precedent on this appeal.
 
 A. Holding of B.K. Instrument
 
 16
 In B.K. Instrument an "unsuccessful bidder" for a government contract brought an action against the United States seeking an injunction cancelling the award of the contract to another, and a declaratory judgment awarding the contract to it. We held that the Administrative Procedure Act (APA), 5 U.S.C. Sec. 702 (1982), waives the defense of sovereign immunity for actions arising under the Constitution, laws or treaties of the United States. 28 U.S.C. Sec. 1331 (1982). We concluded further that disappointed bidders have standing to challenge the government's award in district court when the relief primarily sought is not monetary damages, but the cancellation of a wrongful award of a contract to another. 715 F.2d at 725-27.
 
 
 17
 Section 702 of the APA, upon which the district court here found Chemung's suit to be based, provides for judicial review of agency actions, and states, in relevant part, that "[n]othing herein ... (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." In B.K. Instrument we found that no other statute limits the scope of Sec. 702's waiver of sovereign immunity for post-award equitable actions brought by disappointed bidders. 715 F.2d at 725-27. Thus, we held that district courts continue to possess jurisdiction to exercise their equitable powers over actions brought under 28 U.S.C. Sec. 1331 (1982), that are not founded upon an express or implied contract with the government. The issue left unresolved after B.K. Instrument is whether a "successful bidder" complaining of arbitrary and capricious governmental action in violation of statutory provisions may bring an action in the district court seeking equitable relief.
 
 
 18
 Chemung interprets the scope of B.K. Instrument to allow suits against the government by any person aggrieved by unlawful agency conduct, so long as the party does not seek money damages or the specific performance of a contract. Although the cases cited by Chemung involve disappointed bidders, Chemung argues that the logic of these decisions also permits a successful offeror to bring an action against the government when it violates the bidding statutes. Courts are not concerned with the status of the claimant, Chemung argues, but rather with the government's conduct and the relief sought. Chemung analogizes itself to a "disappointed bidder" for jurisdictional purposes, alleging that the FAA acted arbitrarily and capriciously in attempting to rescind the contract and in refusing to accept its bid reduction.
 
 
 19
 B. Interrelationship Between District Court and Claims Court in Light of Relief Sought by Chemung
 
 
 20
 The NFTA responds that although Chemung characterized itself as a "disappointed bidder" in petitioning the district court for preliminary relief, the complaint sought and the district court's Decision and Order of July 29, 1985 granted relief exceeding its jurisdiction, because Chemung was in fact a successful bidder. Specifically, Chemung's complaint sought not only a declaratory judgment that it was the "winner," but also a mandamus order requiring the FAA to execute the lease with Chemung and an injunction prohibiting the FAA from awarding the contract to the NFTA. It says that the district court declared that Chemung had an enforceable contract with the FAA. The NFTA contends the district court's decision constituted an order specifically enforcing a contract between the FAA and Chemung, which is prohibited by the Tucker Act. Our resolution of these conflicting positions begins with an overview of the relationship between district courts and the claims court and a further inquiry into the relief sought by and granted to Chemung.
 
 
 21
 Chemung alleged in its complaint that the FAA violated the Federal Property and Administrative Services Act (FPASA), 41 U.S.C. Sec. 253 et seq., and Sec. 706(2)(A) of the Administrative Procedure Act in refusing to accept Chemung's reduced bid of May 29, 1985 and in attempting to rescind the contract based on an alleged unilateral error in computing telecommunications costs. The district court entered a judgment stating, in a cursory fashion, only that "the plaintiff's motion for summary judgment is granted." In its opinion, the district court stated, "I intend to grant plaintiff the declaratory relief sought in Paragraph 1 of its prayer for relief." That prayer sought only a declaration that Chemung is the winner.
 
 
 22
 Government agencies are not at liberty to violate statutory commands. They are not spared from judicial review. Barlow v. Collins, 397 U.S. 159, 166-67, 90 S.Ct. 832, 837-38, 25 L.Ed.2d 192 (1970); New York Racing Ass'n., Inc. v. NLRB, 708 F.2d 46, 54 (2d Cir.), cert. denied, 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983); Sea-Land Service, Inc. v. Brown, 600 F.2d 429, 434 (3d Cir.1979); Alan Guttmacher Institute v. McPherson, 597 F.Supp. 1530, 1534 (S.D.N.Y.1984). Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." See generally S. Doc. No. 248, 79th Cong., 2d Sess. 212, 276 (1946). The statute which conferred exclusive jurisdiction on the claims court to "afford complete relief on any contract claim brought before the contract is awarded," 28 U.S.C. Sec. 1491(a)(3), did not purport to depart from existing case law allowing "parties to proceed in the district court pursuant to the provisions of the Administrative Procedure Act in instances of illegal agency action." H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981) (citation omitted) (cited in B.K. Instrument, 715 F.2d at 722). This section of the APA is only limited by the proviso that relief cannot be granted if another section "expressly or impliedly forbids the relief which is sought." 5 U.S.C. Sec. 702(2). The question we now address is whether the gravamen of Chemung's complaint is a damages claim for breach of contract, in which case the district court improperly exercised jurisdiction, or whether the claim is essentially a protest concerning the regularity and integrity of the procurement process.
 
 
 23
 We begin with the proposition that no citizen is legally entitled to transact business with the government. But when the government solicits business, it cannot act in an arbitrary fashion--either substantively or procedurally--towards those it solicits, and such individuals may challenge both the processes and the evidence upon which the government relies. Gonzalez v. Freeman, 334 F.2d 570, 574 (D.C.Cir.1964); see William F. Wilke, Inc. v. Department of the Army, 485 F.2d 180, 183 (4th Cir.1973). Government contracts play a significant role in our modern economy. Laws have been enacted to protect individuals against arbitrary and capricious government conduct and to ensure that federal agencies conduct their business fairly and responsibly. See B.K. Instrument, 715 F.2d at 719.
 
 
 24
 In Motor Coach Industries, Inc. v. Dole, 725 F.2d 958 (4th Cir.1984), the court held that the district court did not abuse its discretion when it enjoined the enforcement of a public contract for the supply of ground transportation buses to an FAA-operated airport. An unsuccessful bidder for the contract had alleged that the Trust formed to purchase the buses was subject to federal procurement guidelines which had not been followed. In upholding the grant of injunctive relief, the Motor Coach court considered the nature of the FAA's actions. The FAA's dealings "did not constitute a technical violation of the [statute]," but evidenced rather a complete disregard for the Act's substantive and procedural requirements. 725 F.2d at 968. Allowing enforcement of the contract "would soon make the procurement statutes little more than 'dead letters on a page.' " Id. More importantly, the court affirmed the injunctive relief granted because the Trust "both undermined the integrity of the congressional appropriation process and ignored substantive duties under the procurement statutes." Id.
 
 
 25
 Although Motor Coach involved an action brought in the district court by a disappointed bidder, the court focused on the agency's actions, not on the claimant's status. The court stated specifically, "Normally, circumstances such as these would require the district court to deny MCI's request for injunctive relief, leaving it to seek money damages in the court of claims for any injuries it sustained because of the FAA's failure to comply with procurement guidelines." Id. at 967-8. But, it emphasized, "sound reasons" militated against treating this situation like a "normal case." Id. at 968. The court fashioned relief designed to preserve the integrity of the procurement process, without concerning itself with plaintiff's monetary damages.
 
 
 26
 In some cases equitable relief may be the only effective means available to preserve the integrity of the procurement process. Id. Only a district court can provide post-award equitable relief to those aggrieved by an agency's violation of the procurement statutes. See 28 U.S.C. Sec. 1491(a)(3). The jurisdiction of the district courts over actions for post-award equitable relief brought under 28 U.S.C. Sec. 1331 remains unimpaired. United States v. John Grimberg Co., Inc., 702 F.2d 1362, 1374 (Fed.Cir.1983) (en banc). The legislative history of 28 U.S.C. Sec. 1491(a)(3) makes clear that Congress aimed to provide equitable powers to the claims court only over pre-award claims. The House Report states in relevant part, "The new section 1491(a) does give the new Claims Court the augmented power to grant declaratory judgments and give equitable relief in contract actions prior to award." H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981) (emphasis added).
 
 
 27
 To maintain the integrity of the bidding process, the district court must be able to review the procedures followed and determine the successful offeror after an award has been made. In deciding whether it has equitable jurisdiction, the district court should not focus on the status of the claimant; the relief sought by the plaintiff controls.
 
 
 28
 C. Jurisdiction of District Court with Respect to Relief Sought by Chemung
 
 
 29
 We now examine whether the relief Chemung sought was in the nature of contract relief, i.e., damages or specific performance of the contract, or was rather equitable relief to enforce the regularity of the bidding process. Chemung framed its request for relief broadly, petitioning the district court to:
 
 
 30
 1. Enter judgment declaring the Chemung County Lease between the FAA and Chemung County to have been properly solicited, bid and award [sic] to Chemung County;
 
 
 31
 2. Enter an order requiring defendants ... to prepare and present to plaintiffs for execution the lease for the AFSS for the Western New York-Northwestern Pennsylvania Flight Plan Area;
 
 
 32
 3. Enter an order enjoining defendants from taking any action, including the execution of a lease, or award of a contract for a lease, with any other party, inconsistent with the award of the Chemung County Lease to plaintiff;
 
 
 33
 4. Award plaintiff the costs of litigation, including reasonable attorneys' fees; and
 
 
 34
 5. Award plaintiff such other and further relief as this Court deems just, fair and equitable.
 
 
 35
 The district court restricted its declaratory judgment to the relief sought in paragraph 1, a declaration that Chemung's bid was lowest and won the lease award for the flight station.
 
 
 36
 The district court has jurisdiction to declare that the contract was properly awarded to Chemung. B.K. Instrument, 715 F.2d at 728. This relief does not result from a disguised contract claim for specific performance. Although the district court's judgment was lacking in the specificity required by Fed.R.Civ.P. 54, its opinion makes clear that Chemung was declared the successful offeror under the solicitation. Jurisdiction resides in the district court "to fashion the equitable relief it deem[s] appropriate." Id.
 
 
 37
 The district court also has jurisdiction, although it declined to exercise it, to grant an injunction enjoining the FAA from taking any action inconsistent with Chemung's contract that would be "the result of procedures not comporting with the law...." Sea-Land Service, 600 F.2d at 433; Delta Data Systems Corp. v. Webster, 744 F.2d 197, 204 (D.C.Cir.1984); see also B.K. Instrument, 715 F.2d at 728. District courts have a continuing duty to insure agency compliance with statutory and regulatory provisions. Sea-Land Service, 600 F.2d at 434. The Supreme Court has warned the federal courts not to "stand aside and rubber stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Labor Board v. Brown, 380 U.S. 278, 291-92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). It has repeatedly been noted that courts must "be careful not to subvert the congressional objectives underlying the enactment of the judicial review statute by allowing the government to give an overly expansive scope to the notion of claims 'founded upon' contract." Wright, Miller & Cooper, Federal Practice and Procedure Sec. 4101 at 210-11 (1978).
 
 
 38
 To the extent Chemung's complaint sought specific performance of the contract--clearly the goal of paragraph 2, requiring the FAA to execute the flight station lease with Chemung--the district court lacked jurisdiction to entertain or grant such relief. It did not in fact grant such relief, but should have declined to do so for jurisdictional reasons, rather than relying on the government's trustworthiness not to take any actions inconsistent with the court's order. B.K. Instrument, 715 F.2d 727-8; Sea-Land Service, 600 F.2d at 433; Alabama Rural Fire Insurance Co. v. Naylor, 530 F.2d 1221, 1225-26 (5th Cir.1976). In Alabama Rural Fire, the Fifth Circuit reversed a district court's order that enjoined the Farmers Home Administration from failing to perform a contract, stating that "the object of the instant suit is clearly to compel the appellants in their official capacities to specifically perform a contract." 530 F.2d at 1226.[1] Similarly, Chemung's prayer for relief requiring defendants to prepare and execute the flight station lease seeks to compel specific performance of the contract.
 
 
 39
 Though the district court had jurisdiction to determine whether Chemung was the successful bidder,[2] its ruling is not adequately supported by findings on critical matters, and the remand is therefore required. The court must decide whether the FAA improperly considered two new factors in its re-evaluation, revised estimates of the volume of traffic at Buffalo and figures based on services required for Syracuse, New York, or whether the FAA properly re-evaluated its decision in light of national guidelines applicable to telecommunications costs. Were the district court to find that the FAA acted arbitrarily and capriciously in improperly recalculating costs, not made part of the solicitation, in its re-evaluation and in then recognizing the NFTA as the successful offeror, it should declare Chemung the successful bidder. On the other hand, if the court finds that the FAA acted properly, by examining only the national guidelines, then under B.K. Instrument, it should rule in favor of the NFTA.
 
 III
 
 40
 Appellant NFTA next argues that the trial judge erred in finding that the FAA's rejection of Chemung's modification and the FAA's attempt to rescind the contract with Chemung were arbitrary and capricious. Courts have jurisdiction to inquire whether an agency's actions violate statutory mandates. The standard of review--rational basis or arbitrary and capricious--is determined by statute. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).
 
 
 41
 Section 10 of the Administrative Procedure Act provides that a reviewing court may hold unlawful and set aside agency action which it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. Sec. 706(2)(A). Citizens to Preserve Overton Park teaches that a court's finding of arbitrary and capricious agency action must be premised on an evaluation of all the relevant factors in the decision and a consideration of whether there has been a "clear error of judgment." 401 U.S. at 416, 91 S.Ct. at 823. While the review of the facts is "searching and careful," the standard of review is narrow--a court may not substitute its judgment for that of the agency. Id.
 
 
 42
 NFTA contends that the rejection of Chemung's proposed cost reduction and the FAA's contemplated rescission of the contract are justified by the need to preserve the integrity of the competitive procurement process and to prevent an auction atmosphere. Chemung argues that the district court properly reviewed the decision of the FAA under the applicable APA standard, neither inquiring into the FAA's method of calculation nor rendering a subjective opinion as to which telecommunications formula should have been used. According to Chemung, the district court merely reached two conclusions: (1) it was arbitrary and capricious of the FAA to reject Chemung's bid reduction when its bid then became the most advantageous; and (2) even if the FAA had a right to rescind the contract, rescission of the most advantageous contract constituted arbitrary and capricious FAA conduct.
 
 
 43
 The NFTA correctly asserts that the FAA acted within its authority when it rejected Chemung's proposed modification, provided that the FAA had not acted arbitrarily in applying new guidelines to evaluate telecommunications costs. When the district court held it arbitrary for the FAA to reject Chemung's bid modification resulting in a lower price, it did not examine whether the alleged error in the evaluation process could properly be considered by the FAA.
 
 
 44
 The FAA had reserved the right in Paragraph 27(C) of the solicitation to accept or reject "a late modification of an otherwise successful offer which makes its terms more favorable to the government...." (emphasis added). Although Chemung was considered the successful offeror on November 30, 1984 the GAO's subsequent investigation and the FAA's re-evaluation determined this to be incorrect. When Chemung modified its offer on May 29, 1985 the FAA had by then already determined that the NFTA was the successful offeror and had published this finding in its report. On the same day that the modification was submitted, the FAA announced to its Eastern Region Flight Service Station Managers that Buffalo was selected as the site for the flight station. In light of this, it was not arbitrary and capricious for the FAA to reject Chemung's modification, since Chemung was no longer the successful bidder. The FAA was legitimately concerned with protecting the integrity of the procurement process and preventing disappointed bidders from creating an auction-like atmosphere. In finding to the contrary the district court impermissibly substituted its judgment for that of the executive agency.
 
 
 45
 Similarly, it was not arbitrary and capricious for the FAA to attempt to rescind the contract with Chemung because it believed the NFTA was the successful offeror, despite the fact that Chemung's offer with the proposed modification would have made its contract the most advantageous. The FAA had the right to correct an alleged error in the procurement process and to insure that all offerors' bids were evaluated even-handedly.[3] Upon remand, the district court should address the question of whether the FAA properly recalculated costs in deciding, in effect, to recognize the NFTA as the winner. In the event that there is a finding that the FAA acted arbitrarily and capriciously by improperly recalculating costs by using factors not compelled by the national guidelines, and Chemung is declared the winner, Chemung may then submit a modification as the successful bidder pursuant to Paragraph 27(C) of the solicitation.
 
 IV
 
 46
 The NFTA challenges the district court's holding that a unilateral FAA error precluded changing Chemung's status as the declared successful bidder on November 30, 1984. The district court cited Alden Auto Parts v. Dolphin Equipment Leasing, 682 F.2d 330 (2d Cir.1982), in support of its finding. That case involved a unilateral mistake in a commercial transaction between private parties. Although a private party--no matter how innocent its reliance--may have to accept the consequences of its mistake, it does not logically follow that the government is bound by such a rule. The government may cancel a contract mistakenly awarded if necessary to preserve confidence in the fairness of the competitive procurement process. See Medical Gas & Respiratory Services, Inc., Comp.Gen.Dec. B-216632, 85-1 CPD p 246 (1985).
 
 
 47
 In Parkview Terrace Apartments, 82-2 BCA p 15,885 (1982), the Department of Housing & Urban Development Board of Contract Appeals held that the party originally designated as successful offeror was properly stripped of that title because of a unilateral error on the part of the federal agency evaluating the qualifications of a competing bidder. The termination came after an impartial evaluation of the criteria announced in the bid solicitation disclosed an error; no bad faith on the part of the government or the agency tainted this cancellation. We believe that the district court erroneously held that the FAA's unilateral mistake precluded the government from terminating Chemung's contract. Absent a showing that the FAA's recission was arbitrary and capricious or in bad faith, it had a right to cancel.
 
 V
 
 48
 The order of July 29, 1985 granting declaratory relief to Chemung is vacated, as is that portion of the order of August 26, 1985 denying the NFTA's motion to re-open and set aside the July 29, 1985 order. The NFTA's cross-appeal for injunctive relief is denied. The NFTA has not demonstrated irreparable harm and either a likelihood of success on the merits or sufficiently serious questions on the merits and a balance of hardships favoring it. Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). The case is remanded to the district court for further proceedings consistent with this Opinion.
 
 
 
 [1]
 In Alabama Rural Fire, as in the case at bar, the government purported to rescind a contract previously awarded. The reason given for the rescission was a lack of capacity to contract rather than the re-evaluation of bids asserted by the government here. The cases are distinguishable further in that the complaint in Alabama Rural Fire was framed only in terms of a breach of contract claim and raised no issues as to the regularity of the bidding process
 
 
 [2]
 The government suggested at oral argument that a declaration by the district court that Chemung is the winner will be useless since the FAA remains free to breach a contract it is declared to have made and face the prospect of a damage award in the claims court. Whether the FAA would pursue such a course is at this point entirely a matter of speculation, perhaps rendered somewhat remote by the FAA's support of NFTA's appeal, which indicates that the FAA is anxious not to be confronted with a judgment declaring Chemung to be the winner. In any event, the parties are entitled to an adjudication of the limited issue within the jurisdiction of the district court, regardless of what steps the FAA might then take
 
 
 [3]
 In that connection we note that the procurement regulations set forth a detailed description of the authority and responsibility of the contracting officer in terminating government contracts. A party whose contract is being terminated must receive unequivocal, written notice, 48 C.F.R. Sec. 49.102. That requirement clearly was not met in this case