

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-1999

# R A Glancey & Sons v. Dept Veteran Affairs

Precedential or Non-Precedential:

Docket 99-3188

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"R A Glancey & Sons v. Dept Veteran Affairs" (1999). *1999 Decisions.* Paper 163.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/163

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 24, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3188

R.A. GLANCY & SONS, INC.,

Appellant,

v.

UNITED STATES OF AMERICA,
DEPARTMENT OF VETERANS AFFAIRS

v.

POERIO, INC.

Intervenor-Appellee

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(Civil Action No. 99-219)
District Judge: The Honorable Donald J. Lee

Argued: May 27, 1999

Before: GREENBERG and ALITO, Circuit Judges,
and DOWD, Senior District Judge.*

(Opinion Filed: June 24, 1999)

_____

*The Honorable David D. Dowd, Jr., United States District Judge for the
Northern District of Ohio, sitting by designation.

MEYER, UNKOVIC & SCOTT, LLP
JAMES R. MALL (ARGUED)
1300 Oliver Building
Pittsburgh, PA 15222

Counsel for Appellant,
R.A. Glancy & Sons, Inc.

DEPARTMENT OF JUSTICE
DOUGLAS HALLIARD-DREIMEIER
 (ARGUED)
ANTHONY J. STEINMEYER
Civil Division
Room 9113
Washington, D.C. 20530-0001

Counsel for Appellee,
United States of America, Department
of Veterans Affairs

ECKERT SEAMANS CHERIN &
 MELLOTT, LLC
JOEL L. LENNEN (ARGUED)
DENNIS L. VERALDI
KEITH L. BAKER
44th Floor, 600 Grant Street
Pittsburgh, PA 15219

Counsel for Appellee-Intervenor,
Poerio, Inc.

OPINION OF THE COURT

ALITO, Circuit Judge:

R.A. Glancy & Sons, Inc. ("Glancy"), a losing bidder for a government contract, appeals the District Court's denial of a request for preliminary injunctive relief. That request sought an order enjoining the successful bidder from working on the project and reinstating Glancy's putatively successful bid. Because Glancy did not establish that it was likely to succeed on the merits or that the balance of equities favored the issuance of a preliminary injunction, we affirm the District Court's decision.

2

I.

On June 1, 1998, the Department of Veterans Affairs
("VA") issued an invitation for bids ("IFB") to renovate the
VA Medical Center in Pittsburgh. The IFB asked for bids on:

        ITEM I:   GENERAL CONSTRUCTION
        ITEM II:  ASBESTOS ABATEMENT
        ALTERNATE NO. 1
        ALTERNATE NO. 2
        ALTERNATE NO. 3
        UNIT PRICE OF MINE GROUTING

(J.A. 190a). The three alternates under Item II were listed
as minor additions to or deletions from the IFB's asbestos
abatement requirements. (J.A. 193-94). The IFB's
performance requirements, set forth in S 01010 of the IFB,
elaborated on the work to be performed:

        ITEM I. GENERAL CONSTRUCTION: Work includes
        general new construction, alterations, walks, grading,
        paving, drainage, mechanical and electrical work,
        elevators, necessary removal of existing structures and
        construction and certain other items.

        ITEM II. ASBESTOS ABATEMENT: Work includes
        abatement of asbestos in the area of the work as well
        as in other selected areas, including the work
        described in ALTERNATE 2 below.

(J.A. 193). Alternate 2 requested a break-out price for
remediating asbestos-containing floor tiles on the third floor
of the building. The IFB form provided separate lines for
each bid item and each alternate line; it contained no
explicit indication that Item II was a subset of Item I. (J.A.
188).

On July 1, 1998, the VA issued a clarifying amendment
to the IFB, which read:

        Although the VA has asked for the price of the
        Asbestos Abatement work to be listed separately (ITEM
        II - ASBESTOS ABATEMENT under item 10 of SF 1442)
        on the bid form, all asbestos abatement work is
        included in a single prime contract that will be the
        responsibility of the General Contractor.

                          3

(J.A. 202).

The VA unsealed the bids on July 15, 1998. The VA determined the lowest bidder by aggregating the bids for Items I & II to reach a total cost for the project. Pursuant to this calculation, Poerio Inc. ("Poerio"), the Appellee, was the lowest bidder, with a bid of $11,401,500. Glancy was the sixth lowest bidder.

Glancy and another bidder, the Massaro Company ("Massaro"), informed the VA that they had understood the IFB to have required that total costs be included in Item I. According to that understanding, both Glancy and Massaro contended that the figure for Item I included the costs of Item II and that Item II was merely a break-out of Item I. (J.A. 213-14). Even under this understanding of the IFB, however, Glancy was the second lowest bidder after Massaro.

Pursuant to Massaro and Glancy's protest, the VA examined the bidding materials, noted that the IFB did not contain customary language indicating that the contract would be awarded based on the aggregate of all bid items, and determined that the IFB was ambiguous. (J.A. 261-62). Based on this conclusion, the VA decided to open a second round of bidding. Massaro, the lowest bidder according to its interpretation of the IFB, and Poerio, the lowest bidder according to its interpretation of the IFB, eachfiled a protest with the Comptroller General under the Competition in Contracting Act, 31 U.S.C. SS 3551-56 (1994), contending that the IFB unambiguously supported their interpretation. The VA submitted briefing in defense of its position that the IFB was ambiguous and therefore should have been canceled. (J.A. 163-68). The VA admitted that the "only interpretation of the [IFB] together with [its specifications] at the time the solicitation was issued, was that each bid item was to be priced separately." (J.A. 166). The VA contended, however, that "the addition of the clarification language in Amendment No. 2 created an ambiguity that can be interpreted in two ways. It can be interpreted to require, as Poerio did, that bids be presented separately for general construction (Bid Item I) and for asbestos abatement (Bid Item II) or it can be interpreted to

4

require, as did both Massaro and Glancy, that Bid Item I contain the bid for all work including asbestos." (J.A. 166).

While the protest was pending before the Comptroller General, the VA conducted a second round of bidding, and in this round Glancy was the lowest bidder. (J.A. 197). Because the protest was pending, however, the VA did not award the contract to Glancy.

The Comptroller General ultimately sustained Poerio's interpretation of the IFB as the only reasonable one and rejected the VA's assertion that the IFB was ambiguous. The Comptroller General stated:

> First, the cover page of the solicitation (Standard Form 1442) identifies two separate bid items for the acquisition, "general construction" and "asbestos abatement." Each of the two bid items is identified on that page as a free-standing item for acquisition by the agency -- specifically, there is no indication that one of the two identified bid items is encompassed by the other. Second, the IFB's performance requirements . . . expressly define "general construction" and"asbestos abatement" as distinct, separable work efforts; again, each bid item description follows the separate title and item number associated with each of the two separate work categories. The stated item I (general construction) simply does not encompass the separately stated item II specialized work requirements in the area of asbestos abatement. Third, the bid schedule itself clearly separates the two bid items: there is one space for the bidder's price for the general construction work, and a separate space for the price for the asbestos abatement work. Finally amendment No. 2 that one prime contract would be awarded, to include both the item I and item II work requirements, simply does not provide any reasonable basis for a bidder to conclude that its item II price should be included in its item I price.

(Comptroller General Op. at 4). After noting that bidders who perceived an ambiguity should have requested a clarification from the VA before submitting their bids, the Comptroller General concluded that the VA lacked a

5

compelling reason for cancelling the first solicitation, and the Comptroller General recommended that Poerio be granted the contract pursuant to the first solicitation. (Id. at 5). After receiving the Comptroller General's opinion, the VA informed the bidders that it was reactivating thefirst round of bidding, and it then awarded the contract to Poerio.

Glancy brought this action in the District Court. Glancy asked the Court to declare that the VA's decision was arbitrary and capricious and that Glancy was the low bidder and was entitled to the contract. Glancy also requested, among other things, injunctive relief ordering the VA not to award the contract to any other parties. At Glancy's request, the District Court issued a temporary restraining order on February 24, 1999. (J.A. 3). The District Court scheduled a hearing on whether a preliminary injunction should issue, and this hearing was held before a Magistrate Judge on March 3, 1999. On March 5, 1999, the Magistrate Judge issued her Report and Recommendation, concluding that Glancy had not shown that it was likely to succeed on the merits of its challenge to the VA's decision or that it would suffer irreparable injury in the absence of preliminary injunctive relief. The Magistrate Judge, accordingly, recommended that the request for a preliminary injunction be denied. The District Court adopted the Magistrate Judge's recommendations, found that granting a preliminary injunction would not be in the public interest because of the delays that such relief would cause in needed renovations to the hospital, and denied the motion for a preliminary injunction. This expedited appeal followed.

II.

The District Court's denial of a preliminary injunction is reviewed for abuse of discretion. Cleary v. Waldman, 167 F.3d 801, 804 (3d Cir. 1999). The District Court did not abuse its discretion, and we therefore affirm.

Under 28 U.S.C. S 1491(b)(4) (1994),1 the VA's decision is

_____

1. The jurisdiction of the District Court rested exclusively on 28 U.S.C. S 1491(b). Although Glancy's complaint involved 28 U.S.C. S 1346(a)(2), Glancy subsequently disavowed any reliance on that provision.

subject to review under the standards set forth in the Administrative Procedures Act, 5 U.S.C. S 706 (1994), and thus Glancy could not prevail in this case without showing that the VA's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. S 706 (1994). Applying this standard in prior procurement cases, we have observed that "[j]udicial intervention in procurement disputes necessarily results in delay and the expenditure of funds on behalf of all parties, usually without measurable benefit to the public," Sea-Land Serv., Inc. v. Brown, 600 F.2d 429, 434 (3d Cir. 1979), and we have held that discretion to award injunctive relief in such cases "is restricted to circumstances where the governmental agency's action is illegal or irrational." Coco Bros. v. Pierce, 741 F.2d 675, 679 (3d Cir. 1984); see also Sea-Land, 600 F.2d at 434 (only where agency action has "no rational basis" or upon a showing of "clear illegality" may federal court enjoin government procurement decision).

Further, while irrationality or illegality is a necessary condition to the issuance of an injunction in the government procurement context, "[e]ven when that showing has been made, prudent judicial discretion may still refuse declaratory or injunctive relief because of overriding public interests." Sea-Land, 600 F.2d at 434; see also Coco, 741 F.2d at 680; Princeton Combustion Research Lab., Inc. v. McCarthy, 674 F.2d 1016, 1021-22 (3d Cir. 1982); Allis-Chalmers Corp. v. Friedkin, 635 F.2d 248, 253 (3d Cir. 1980). Thus, in determining whether injunctive relief is proper, a court must also weigh "the practical considerations of efficient government operation; the public interest in avoiding excessive costs; and the bidders' entitlement to fair treatment through agency adherence to statutes and regulations." Sea-Land, 600 F.2d at 434.

Finally, where as here the Comptroller General has made a recommendation that the procuring officer follows, that recommendation must be taken into account in reviewing the Executive's decision. In the Competition in Contracting Act ("CICA"), 31 U.S.C. SS 3551-56 (1994), Congress strengthened the Comptroller General's role in the government procurement process. Honeywell, Inc. v. United

7

States, 870 F.2d 644, 648 (Fed. Cir. 1989). We have noted that while the CICA does not "compel procuring agencies to obey the recommendation of the Comptroller General,"2 its effect "is to compel procurement officials to make purchase decisions in light of what the Comptroller General recommends the government do in that case." Ameron v. United States Army Corps of Eng'rs, 809 F.2d 979, 986 (3d Cir. 1986); see Honeywell, 870 F.2d at 648 (in light of CICA, "a procurement agency's decision to follow the Comptroller General's recommendation, even though that recommendation differed from the contracting officer's initial decision, [is] proper unless the Comptroller General's decision itself was irrational").

Applying these standards,3 we can discern no abuse of discretion in the District Court's determination that Glancy is unlikely to succeed on the merits. The GAO first noted that, under applicable law, only a compelling reason will justify reopening a closed bidding process. (Comptroller General's Op. at 3). The reason for this is to discourage "auction type" bidding at which a disappointed bidder, armed with knowledge of the prior bids, artificially lowers its bid in order to win the contract. Chemung County v. Dole, 781 F.2d 963, 972 (2d Cir. 1986). While an ambiguity in a bid solicitation can be a sufficiently compelling reason to reopen the bidding process, the Comptroller General concluded in this case that the IFB was not "susceptible to

_____

2. In Ameron v. United States Army Corps of Eng'rs, 809 F.2d 979 (3d Cir. 1986), the government argued unsuccessfully that the CICA is unconstitutional insofar as it authorizes the Comptroller General to shorten or lengthen the stay of the execution of a contract that automatically occurs when a bid protest is filed with the Comptroller General. However, the government did not challenge the Comptroller General's authority to investigate procurement decisions or to make recommendations on the basis of his investigation. See 809 F.2d at 988.

3. Glancy's attempt to distinguish Sea-Land , Princeton Combustion and Coco is unavailing. Glancy argues that these cases do not apply because they did not involve sealed bids (as here) or did not involve a situation where the procuring agency reversed itself on the basis of the GAO's recommendation. These are distinctions without significance in this context. In any event, Glancy does not even attempt to distinguish Honeywell, a case squarely on point, and that clearly supports the deferential standard of judicial review the District Court employed.

8

more than one reasonable interpretation when read in the context of the solicitation as a whole." (Comptroller General Op. at 3) (emphasis added). This decision is rational for the reasons identified by the Comptroller General-- the IFB contained two separate items upon which bidders were to submit bids, separate lines were provided for the bids on these items, and the clarifying amendment's admonition that one prime contract would be awarded was not a reasonable basis upon which to base a conclusion that Item II was a break-out of Item I. Mindful that courts are not to substitute their judgment for that of the Executive, we agree with the District Court's assessment of the merits and with its conclusion that preliminary injunctive relief was inappropriate.

The District Court's alternate basis for denying relief -- that the delays associated with bringing in a new general contractor if preliminary injunctive relief were granted would not be in the public interest because it would further delay the renovation of a vital liver transplant center -- is based on factual findings amply supported by the record. (Supp. Findings of Fact P 2 et seq.). We agree with the District Court that the equities here do not lie with Glancy, especially in light of the fact that even under its understanding of the first solicitation, Glancy was not the low bidder. (See Gov't Br. at 40-41 ("Glancy's claimed interest in fair procurement procedures rings hollow. Glancy was not the low bidder in the initial round of bidding even under its own reading of the original solicitation.").)

III.

Accordingly, we affirm the District Court's March 10, 1999, Order denying Glancy's motion for preliminary injunctive relief.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9