**CLARK CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**Federico PENA, et al., Defendants.**

Civ. No. 95–D–447–N.

United States District Court, M.D. Alabama, Northern Division.

April 18, 1996.

James H. Anderson, Beers, Anderson, Jackson & Smith, P.C., Montgomery, AL, Keith J. Harrison, Jeffrey L. Poston, King, Pagano & Harrison, Washington, DC, for Clark Construction Co., Inc.

Patricia A. Snyder, Redding Pitt, U.S. Attorney, Arthur G. Davis, U.S. Attorney's Office, Montgomery, AL, James C. Thomason, III, Federal Highway Administration, Atlanta, GA, for Federico F. Pena, Rodney Slater.

Janie B. Johnston Clarke, Jack Franklin Norton, Jerry L. Weidler, Alabama Department of Transportation, Legal Division, Montgomery, AL, Pamela Ragan Scott, Alabama Department of Transportation, Montgomery, AL, for James F. Butts.

### MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is plaintiff Clark Construction Company, Inc.'s motion for sum-

mary judgment filed August 25, 1995. The defendants responded in opposition on September 18, 1995. The director of the Alabama Department of Transportation, Jimmy F. Butts, also filed a motion for summary judgment on September 18, 1995. Because the motions involve similar issues and arise from the same set of facts, the court will address them simultaneously.[1] In ruling on said motions, the court has considered the parties' respective briefs, as well as the replies and responses thereto. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the plaintiff's motion is due to be granted and that the defendant's motion is due to be denied.

## JURISDICTION

■ This is an action arising under the United States Constitution, the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202; therefore, jurisdiction is proper under 28 U.S.C. § 1331.[2] Personal jurisdiction and venue are uncontested.

## STANDING

■ The plaintiff's legal standing to appeal the actions of the respective federal agency defendants lies in the Administrative Procedure Act, 5 U.S.C. §§ 701–706.[3] Section 702 of that Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review" thereof. The court finds that the plaintiff, as an unsuccessful bidder, has standing to challenge the federal defendants' proposed plan

to award the contract to a third party. *See Choctaw Mfg. Co. v. United States,* 761 F.2d 609 (11th Cir.1985).

## FINDINGS OF FACT AND PROCEDURAL HISTORY

In *Clark Construction Co. v. Pena,* 895 F.Supp. 1483 (M.D.Ala.1995) (DeMent, J.),[4] the court granted plaintiff Clark Construction Company's motion for preliminary injunction, thereby enjoining the defendants from concurring in or approving the award of Alabama Project MAAF–DBAAF–214(37) to any company other than Clark Construction Company, pending a trial on the merits. Complete findings of fact are contained in *Clark I,* which the court herein incorporates by reference because the facts are unchanged and undisputed. The court need not repeat its previous findings but will instead set forth a brief history of the proceedings in this case.

On March 30, 1995, Clark Construction filed a motion for a temporary restraining order in the United States District Court for the District of Columbia. On March 31, 1995, the Honorable Stanley Harris, United States District Judge, held a hearing on Clark Construction's motion for a temporary restraining order. During said hearing, counsel for the federal defendants represented to the court that the traffic restriction at issue was immaterial and primarily a state concern:

> What we must all recognize [is that the traffic restriction issue is] a very, very, very minor aspect of something that does not even amount to a Federal procure-

1. The motions for summary judgment now before the court also incorporate arguments from the motions to dismiss previously filed in this case. Because this memorandum opinion is dispositive of the issues in favor of the plaintiff, the court need not rule on the motions to dismiss and will deny them as moot in a separate order. However, the court notes that most, if not all, of the issues in the motions to dismiss are addressed herein or have been addressed previously by the court.

2. Section 1331 provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331.

3. The court notes that the Administrative Procedure Act does not create a private cause of action against a state agency. *See* 5 U.S.C. § 701(b)(1); *see also Johnson v. Rodriguez,* 943 F.2d 104, 109 n. 5 (1st Cir.1991), *cert. denied,* 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992) (citing *City of Rohnert Park v. Harris,* 601 F.2d 1040, 1048 (9th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980)). Therefore, the Administrative Procedure Act only applies in this case to the federal defendants.

4. Hereafter, the court will refer to the June 26, 1995, memorandum opinion and order as *Clark I.*

**1476**

ment. Remember, what we are talking about is a procurement by the State government of one of fifty States all of which is subject to the same rules. Pl.'s Ex. 11 at 45–46. Therefore, on April 3, 1995, Judge Harris granted Clark Construction's motion, thereby enjoining the federal defendants from funding the project, and transferred this matter to the United States District Court for the Middle District of Alabama so that the State of Alabama would have the opportunity to intervene or become a defendant.

On May 22, 1995, this court heard oral argument on Clark Construction's motion for a preliminary injunction. During said hearing, chief counsel to the Alabama Department of Transportation ("ADOT") represented to the court that, but for the action by the Federal Highway Administration ("FHWA"), the ADOT would have awarded the contract to Clark Construction. Pl.'s Ex. 6 at 13, 20 (Preliminary Injunction Tr.); Pl.'s Ex. 12 at ¶ 6 (Decl. of James F. Butts). Counsel further admitted that the ADOT originally selected Clark Construction as the awardee on grounds that Clark Construction's original bid complied with all applicable regulations and statutes, and Clark Construction was the lowest responsible bidder. Pl.'s Ex. 6 at 20 (Preliminary Injunction Tr.). Despite conceding the validity of Clark Construction's original bid, aforementioned counsel contended that Clark Construction's bid no longer exists and, thus, cannot be resubmitted to FHWA. *Id.* at 13.

At the preliminary injunction hearing, the FHWA argued that the State of Alabama was an indispensable party. *Id.* at 11. At the conclusion of the hearing, the court allowed Clark Construction to file a motion to amend its complaint to add the State of Alabama as an indispensable party. Thereafter, Clark Construction moved to amend its complaint to add James F. Butts, director of the ADOT, as an indispensable party. Despite Mr. Butts' argument that the Eleventh Amendment prevented such a suit against the State, the court granted the motion to amend on May 30, 1995. Subsequently, the court entered an order (*Clark I*) on June 26, 1995, granting Clark Construction's motion for a preliminary injunction and enjoining the federal and state defendants from con-

curring in or approving the award of Alabama Project MAAAF–DBAAF–214(37) to any company other than Clark Construction, pending a trial on the merits.

## SUMMARY JUDGMENT STANDARD

 On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

 The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, togeth-

er with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(e).

■■■ In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact that should properly proceed to trial for resolution.

## DISCUSSION

### I. *Permanent Injunction Standard*

■■■ The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the movant must demonstrate actual success on the merits rather than merely show a likelihood of success on the merits. *Amoco Production Co. v. Village of Gambell,* *Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987) (citing *University of Texas v. Camenisch,* 451 U.S. 390, 392, 101 S.Ct. 1830, 1832, 68 L.Ed.2d 175 (1981)); *see also Church & Dwight Co. v. S.C. Johnson & Son, Inc.,* 873 F.Supp. 893 (D.N.J.1994); *Public Interest Research Group of New Jersey, Inc. v. Rice,* 774 F.Supp. 317 (D.N.J.1991); *Allen v. State of Minnesota,* 867 F.Supp. 853 (D.Minn. 1994); *Durango Herald, Inc. v. Riddle,* 719 F.Supp. 941 (D.Colo.1988). Therefore, the court will employ the following traditional prerequisites to equitable relief: " '(1) (success) ... on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) ... the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) granting the [permanent] injunction will not disserve the public interest.' " *Penthouse International, Ltd. v. McAuliffe,* 436 F.Supp. 1241, 1249 (N.D.Ga. 1977), *aff'd in part, rev'd in part,* 610 F.2d 1353 (5th Cir.), *cert. denied,* 447 U.S. 931, 100 S.Ct. 3031, 65 L.Ed.2d 1131 (1980) (bracket added) (quoting *Morgan v. Fletcher,* 518 F.2d 236, 239 (5th Cir.1975)); *see also Penthouse International, Ltd. v. McAuliffe,* 454 F.Supp. 289, 303 n. 16 (N.D.Ga.1978) (same); *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 159 (11th Cir.1990) (standard for preliminary injunction).[5] Essentially, the last three elements require Clark Construction to show that the balance of equities tips in favor of injunctive relief.

### II. *Exercise of Equity Jurisdiction*

Before addressing the foregoing elements, the court will determine whether Clark Construction has demonstrated that the court's exercise of equity jurisdiction is proper. *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971). In meeting its burden of demonstrating that the court's exercise of equity jurisdiction is proper, Clark Construction must show that: (1) it has no adequate legal remedy;[6] (2) the

---

5. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) *(en banc ).*

6. The court notes that the doctrine that the legal remedy must be inadequate before equity will act is inextricably intertwined with the irreparable injury element. *See Clark I* at 1493 (citing *Collins & Co., General Contractors, Inc. v. Claytor,* 476 F.Supp. 407, 410 (N.D.Ga.1979)); *see also Northeast Women's Ctr. v. McMonagle,* 665

threatened injury is real, not imagined; and (3) no equitable defenses exist. *Roe v. Operation Rescue,* 919 F.2d 857, 867 n. 8 (3d Cir.1990) (citations omitted).

### A. Inadequate Legal Remedy

■ Here, the court finds that Clark Construction lacks an adequate remedy at law. As noted in *Clark I,* Clark Construction's only alternative to injunctive relief is an action for money damages in the United States Court of Claims. *See Clark I* at 1493 (citing *Keco Indus., Inc. v. United States,* 428 F.2d 1233 (Ct.Cl.1970)). In such an action, Clark Construction could recover its bid preparation costs. However, courts have found that monetary relief, such as recovery of bid preparation costs, generally is insufficient to compensate an unsuccessful bidder for the wrongful award of a government procurement contract:

> It is the plaintiff's assertion that those damages [bid preparation costs] are clearly inadequate, since they may not include the loss of profits that the plaintiff would have made on this more than two million dollar contract had it been awarded the contract in question. The court agrees. *See Ainslie Corp. v. Middendorf,* 381 F.Supp. 305, 307 (D.Mass.1974). The federal courts have recognized the inadequacy of the Court of Claims remedy. In *General Electric Co. v. Seamans,* 340 F.Supp. 636 (D.D.C.1972), the court held that the action for damages in the Court of Claims was an inadequate remedy because it did not fully compensate the loss sustained by the frustrated bidder. While recognizing authority to the contrary, this court finds that the Fifth Circuit takes the position that in an appropriate case equitable relief to an aggrieved bidder is proper. *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260 (5th Cir. 1978); *Hayes International Corp. v. McLucas,* 509 F.2d 247 (5th Cir.1975) [, *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975) ]. The court believes

the instant case to be appropriate for injunctive relief. . . .

*See Clark I* at 1493 (quoting *Collins & Co., General Contractors, Inc.,* 476 F.Supp. at 410 (citations omitted)) (bracket added). The court reiterates its earlier finding in *Clark I* that the right to fair and equal treatment in bidding for government procurement contracts is a statutory right, which can be adequately protected only through the issuance of injunctive relief. *Id.* (citing *National Maritime Union of America v. Commander, Military Sealift Command,* 824 F.2d 1228, 1237 (D.C.Cir.1987)). Hence, the court agrees with the Second Circuit that "[i]n some cases equitable relief may be the only effective means available to preserve the integrity of the procurement process." *Chemung County v. Dole,* 781 F.2d 963, 969 (2d Cir.1986) (citing *Motor Coach Indus., Inc. v. Dole,* 725 F.2d 958 (4th Cir.1984)). Accordingly, Clark Construction lacks an adequate remedy at law against the defendants.

■ The court finds it noteworthy to elaborate on the inadequacy of a legal remedy against Mr. Butts. Mr. Butts contends that the claims against him are barred by the Eleventh Amendment and sovereign immunity. However, the court finds that this argument supports the inadequacy of legal remedies against him. The court agrees with Mr. Butts that this suit against him, as a state officer, is, for all practical purposes, against the State of Alabama.[7] *See Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir.1989) ("Suits against [state officials, such as Mr. Butts here,] are effectively suits against the entity that those officials represent."); *see also Cofield v. Randolph County Comm'n,* 844 F.Supp. 1499, 1503 (M.D.Ala.1994). As such, "[t]he [E]leventh [A]mendment to the Constitution of the United States prohibits a federal court from exercising jurisdiction over a lawsuit against a state, unless that state either consents to be sued or waives its immu-

---

F.Supp. 1147, 1153 n. 3 (E.D.Pa.1987), *aff'd in part,* 868 F.2d 1342 (3d Cir.1989) ("[I]rreparable injury is simply one basis for showing the inadequacy of the available legal remedy.") (citation omitted); *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971) ("[C]ourts of equity should not act ... when the moving party has an adequate remedy at law and

will not suffer irreparable injury if denied equitable relief."). For organizational purposes, the court will address the irreparable injury element in its discussion of an inadequate remedy at law.

**7.** For simplicity purposes, the court in this opinion will still refer to the state defendant as Mr. Butts.

nity from such suit." *Free,* 887 F.2d at 1557 (citing *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 96–100, 104 S.Ct. 900, 905–08, 79 L.Ed.2d 67 (1984)). Here, the State of Alabama has neither consented to be sued nor waived its Eleventh Amendment immunity. Thus, because of the mandates of the Eleventh Amendment it appears that Mr. Butts should be dismissed from this action.

■ However, it is well established that the Eleventh Amendment is not a bar to an award of prospective injunctive relief against state officials in their official capacities to keep them from violating a plaintiff's federal rights, including constitutional and statutory rights. *See Wu v. Thomas,* 863 F.2d 1543, 1550 (11th Cir.1989) (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *see also Toney v. State of Alabama,* 784 F.Supp. 1542, 1545 (M.D.Ala.1992); *National Deposit Guaranty Corp. v. Sauls,* 684 F.Supp. 262, 265 (M.D.Ala.1987); *Lewis v. Baxley,* 368 F.Supp. 768, 772 n. 3 (M.D.Ala. 1973). Therefore, the Eleventh Amendment ensures that "[a] legal remedy is unavailable [against Mr. Butts] and that the only relief available is equitable in nature."[8] *Temple University v. White,* 941 F.2d 201, 215 (3d Cir.1991), *cert. denied,* 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992) (similar analysis) (citations omitted).

■ Mr. Butts also contends that the doctrine of sovereign immunity, codified in the Alabama State Constitution under Article 1 § 14, immunizes him against the claims brought by Clark Construction. However, the court rejects Mr. Butt's assertion and finds that he construes the proscription of § 14 in an overbroad and inaccurate manner.

Article 1 § 14 of the Alabama State Constitution provides: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." However, courts have carved out exceptions to this section. For example, courts have routinely held that where a party sues a state official in his or her official capacity and seeks injunctive or declaratory relief, as opposed to monetary relief, the proscription set forth in § 14 does not apply. *Jefferson County Pharmaceutical Ass'n v. Abbott Labs,* 656 F.2d 92 (5th Cir.1981), *rev'd on other grounds,* 460 U.S. 150, 103 S.Ct. 1011, 74 L.Ed.2d 882 (1983); *Lewis,* 368 F.Supp. at 772 n. 3 (M.D.Ala. 1973); *Aland v. Graham,* 287 Ala. 226, 250 So.2d 677 (1971); *Wallace v. Board of Educ.,* 280 Ala. 635, 197 So.2d 428 (1967); *Southall v. Stricos Corp.,* 275 Ala. 156, 153 So.2d 234 (1963); *Glass v. Prudential Ins. Co.,* 246 Ala. 579, 22 So.2d 13 (1945).

The Supreme Court of Alabama has recently emphasized that where a state official acts "willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority or under a mistaken interpretation of the law," § 14 does not immunize him from a suit seeking injunctive or declarative relief. *Mitchell v. Davis,* 598 So.2d 801, 806 (Ala. 1992) (quoting *Phillips v. Thomas,* 555 So.2d 81, 83 (Ala.1989)). More importantly here, the Court in *Mitchell* went on to explain that "a state [official] is not immune from suit to compel the performance of a legal duty, . . . a suit to compel performance of a ministerial act, or a suit brought under the Declaratory Judgments Act." *Id.; see also Aland,* 250 So.2d at 679.

In light of the foregoing authority, the court finds that Mr. Butts is not immune from Clark Construction's suit to compel him

---

8. In making this determination, the court rejects Mr. Butt's argument that Clark Construction is only seeking to enforce its alleged contractual rights. Mr. Butts is attempting to distinguish *Ex parte Young, supra,* which only applies to injunctions against a state officer to force the officer to comply with federal law. The court finds that a plausible reading of the amended complaint suggests that Clark Construction mainly is seeking to compel compliance with federal law. *See* Pl.'s Amend.Compl. (filed May 30, 1995). However, Count V in the amended complaint seeks Mr. Butt's compliance with the Alabama Competitive Bid Law, and as such, the court is barred by the

Eleventh Amendment from enjoining Mr. Butts for any violation of said claim. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that federal courts are barred by the Eleventh Amendment from enjoining state officers from violating state law); *see also Burch v. Apalachee Community Mental Health Servs.,* 840 F.2d 797, 801 n. 8 (11th Cir.1988), *aff'd,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Armstead v. Pingree,* 629 F.Supp. 273, 278 (M.D.Fla.1986) ("Such matters must be resolved by state courts."). Therefore, the court expresses no opinion on the merits of Count V.

to perform his legal duty under the law and award the contract to Clark Construction. Accordingly, based on the aforementioned Eleventh Amendment and sovereign immunity discussions, the court finds additional support that the remedy at law against Mr. Butts is inadequate. Based on the foregoing, it is without question that the only means by which Clark Construction can avoid irreparable harm by the federal defendants and Mr. Butts is through injunctive relief.

### B. Threatened Injury

■ It is also abundantly clear to the court that the threatened injury to Clark Construction is real, not imaginary. Moreover, the harm is not merely potential but rather is immediate. *See generally, Orantes–Hernandez v. Thornburgh,* 919 F.2d 549 (9th Cir.1990); *McLendon v. Continental Can Co.,* 908 F.2d 1171 (3d Cir.1990); *Lopez v. Garriga,* 917 F.2d 63 (1st Cir.1990). The threatened injury to Clark Construction is apparent from the undisputed evidence that the ADOT has submitted APAC's name to the FHWA for concurrence, and but for the preliminary injunction, the FHWA presumably would concur in the awarding of the project at issue to APAC–Alabama, Inc. ("APAC"), not Clark Construction. Thus, unless the court enjoins the ADOT and the FHWA's alleged unlawful actions, Clark Construction will not be awarded the project, even though it was the original low bidder. In fact, Clark Construction will be denied the project through no fault of its own.

As such, the specific act complained of by Clark Construction will actually take place if the court does not order a permanent injunction. Consequently, the defendants' actions which allegedly violated the law would result in real and immediate injury to Clark Construction. Based on the foregoing, the court finds that the evidence clearly demonstrates that unless an injunction is issued, Clark Construction will suffer a real, not conjectural or hypothetical, injury and that, in the absence of an injunction, the injury will be continual. *See Diamond Waste, Inc. v. Monroe County,* 869 F.Supp. 944 (M.D.Ga.1994).

### C. Equitable Defense

■ Mr. Butts' contends that the equitable defense of laches constitutes a bar to any equitable relief.[9] In support thereof, Mr. Butts relies on *DRT Mechanical Corp. v. Collin County,* 845 F.Supp. 1159 (E.D.Tex. 1994), which discusses the doctrine of laches under Texas law. To establish the defense of laches, Mr. Butts must prove that he suffered undue prejudice as a result of Clark Construction's inexcusable delay in asserting its rights. *SunAmerica Corp. v. Sun Life Assurance Co. of Canada,* 77 F.3d 1325, 1347–48, 1996 WL 91227 at *21 (11th Cir. March 19, 1996); *see also AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1545 (11th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); *Kansas v. Colorado,* —— U.S. ——, ——, 115 S.Ct. 1733, 1742, 131 L.Ed.2d 759 (1995) ("The defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' ") (quoting *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)); Black's Law Dictionary 875 (6th ed. 1990) (" 'Doctrine of laches,' is based upon maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to [the] adverse party, operates as bar in court of equity.").

Mr. Butts argues that Alabama suffered undue prejudice because Clark Construction failed to petition the state court for an injunction immediately. The court rejects this argument. As a federal agency and branch of the United States government, the FHWA could not be sued in state court because a state court cannot enjoin a federal agency.[10] *State of Alabama v. Rogers,* 187 F.Supp. 848, 852 (M.D.Ala.1960), *aff'd,* 285 F.2d 430 (5th Cir.), *cert. denied,* 366 U.S. 913, 81 S.Ct.

---

**9.** The court notes that the federal defendants have not set forth any equitable defenses.

**10.** The court agrees with Clark Construction that "[a] government contractor should be able to file a single action in federal court against both the federal and state governments," as long as the action against the state does not violate the Eleventh Amendment. *See* Pl.'s Mot. for Summ.J. at 31.

1085, 6 L.Ed.2d 236 (1961) ("[T]he State court action in issuing its injunction ... was in violation of the basic legal principle that State courts are without jurisdiction to review the discretion or enjoin the acts of federal officers."); *State of Alabama v. Jones,* 189 F.Supp. 61, 64 (M.D.Ala.1960).

Moreover, the court is persuaded both by the fact that the ADOT had notice from the moment it rejected all the bids in the first sealed bid competition that Clark Construction intended to take measures to protect its rights and by the timing of Clark Construction's suit. As the court noted in *Clark I,*

> because of [ADOT's decision to resolicit bids for the project], Clark Construction began to pursue administrative remedies. Clark Construction formally requested that ADOT appeal the decision by the Montgomery Federal Highway Administration Office to the Regional Federal Highway Administration in Atlanta. ADOT refused to do so. Next, Clark Construction filed a bid protest with the General Accounting Office ("GAO"). However, the GAO dismissed the bid protest claiming that it lacked jurisdiction over the matter.

*Clark I* at 1488. Clark Construction received notice of the GAO decision on March 24, 1995. Thereafter, Clark Construction filed the instant action in the United States District Court for the District of Columbia on March 30, 1995. Accordingly, the court finds that Clark Construction filed this action immediately upon exhausting its administrative remedies, and therefore, any delay is excusable.

Finally, Mr. Butts' reliance on *DRT Mechanical Corp., supra,* is misplaced. In *DRT Mechanical Corp.,* the plaintiff initially protested the contract award with the awarding authority and then waited almost six months after the bid protest was completed to file its lawsuit. 845 F.Supp. at 1163. More importantly though, the lawsuit was filed after the contract had been awarded to another bidder and after construction had begun and was well underway. *Id.* The court held that "by allowing the County[, the awarding authority,] to proceed with construction and incur the expenses of the construction process, the County's position was changed to its detriment." *Id.* (bracket added). However, in this case, no contract has been awarded, no construction has proceeded and no expenses of the construction process have been incurred by the State. Based on the foregoing, the court finds that Clark Construction's claims are not barred by the defense of laches.

For the foregoing reasons, the court finds this action properly invokes the court's equity jurisdiction. The court will next proceed to determine whether the issuance of a permanent injunction is proper under the circumstances presented here.

### III. Issuance of Permanent Injunction

#### A. The Plaintiff's Success on the Merits

##### i. Federal Defendants

Before turning to the merits of the underlying case, the court must address two threshold matters. *See Clark I* at 1489–90 (identical analysis and findings). First, the court must ascertain the legal standard for reviewing the federal defendants' decision to reject Clark Construction as the originally proposed contract awardee. Second, the court must determine the amount of deference that is to be accorded that decision.

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, restricts the scope of judicial review in evaluating federal agency action. The court may overturn the agency decision only if: "(1) [T]he procurement official's decisions on matters committed primarily to his [or her] own discretion has no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1271 (5th Cir.1978) (citation omitted); *see also Choctaw Mfg. Co. v. United States,* 761 F.2d 609, 616 (11th Cir.1985); *Mark Dunning Indus., Inc. v. Cheney,* 726 F.Supp. 810, 814 (M.D.Ala.1989), *aff'd in part,* 934 F.2d 266 (11th Cir.1991).

This standard recaps the provisions of the APA, which provide that

> [t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, inter-

pret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

. . . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

5 U.S.C. § 706 (quoted in *Shoals Am. Indus., Inc. v. United States,* 877 F.2d 883, 887 (11th Cir.1989)). This proscription against arbitrary and capricious actions applies to agencies overseeing bids for government contracts. *Chemung County v. Dole,* 781 F.2d 963, 969 (2d Cir.1986) ("[W]hen the government solicits business, it cannot act in an arbitrary fashion—either substantively or procedurally—towards those it solicits, and such individuals may challenge both the processes and the evidence upon which the government relies.") (citations omitted).

■ When reviewing agency action under the APA, the court must accord great deference to the agency's evaluation of bids and must not supplant its own judgment for that of an agency simply because the court finds the reasoning " 'ill-considered, or to represent the less appealing alternative solution available.' " *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1299 (D.C.Cir.1971) (quoted in *Kinnett Dairies, Inc.,* 580 F.2d at 1271); *see also Shoals Am. Indus., Inc.,* 877 F.2d at 888 (reversing the district court for failing to afford sufficient weight to a GAO decision). In other words, the court should enjoin a government contract determination of this kind only if "there has been a clear violation of duty by the procurement officials." *Kinnett Dairies, Inc.,* 580 F.2d at 1271.

■ However, while the court should allow administrative agencies to function with minimum interference by the judiciary, "uncritical deference" to an agency decision is inappropriate. *Shoals Am. Indus., Inc.,* 877 F.2d at 889. "[T]here certainly may be instances where the District Court will find procurement illegality that the [agency]

failed to recognize, or at any event failed to correct." *M. Steinthal & Co.,* 455 F.2d at 1305 (quoted in *Latecoere Int'l, Inc. v. United States Dep't of the Navy,* 19 F.3d 1342, 1356 (11th Cir.1994)).

■ Here, the court finds that the FHWA's decision not only has no rational basis but also that the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations. The Federal Highway Act requires that contracts be awarded to the lowest responsible bidder pursuant to the state highway authority's regulations. 23 C.F.R. § 635.114; 23 U.S.C. § 112(B)(1). Once a state selects a contractor, it submits its selection to the FHWA for its concurrence. As noted in *Clark I,* the FHWA's authority to reject a state proposal award is statutorily limited:

Contracts for the construction of each project shall be awarded only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility. No requirement or obligation shall be imposed as condition precedent to the award of a contract to such bidder for a project, or to the Secretary's concurrence in the award of contract to such bidder, unless such requirement or obligation is otherwise lawful and is specifically set forth in the advertised specifications.

*Clark I* at 1490 (quoting 23 U.S.C. § 112(b)(1)) (emphasis supplied).

As yet, the federal defendants have failed to direct the court's attention to a single federal statute or regulation that identifies the omission of a traffic control note in an already approved Plans, Specifications & Estimates ("PS & E") as a basis for withholding official concurrence. In fact, the federal defendants do not dispute Clark Construction's assertion that the only basis set forth by federal law authorizing the government to reject a state's proper selection of a contractor is in the situation involving unbalanced bids.[11] *See* 23 C.F.R. § 635.114. Moreover, it is undisputed that the original PS & E did not include a provision that notified prospective bidders that approval of the apparent low bidder was subject to the FHWA's deter-

---

**11.** Clark Construction contends that it is aware of only three instances where the FHWA rejected an awardee proposed by the ADOT—all of which involved unbalanced bids. Pl.'s Ex. 2 at ¶¶ 11–12 (Clark Decl. I); *see also* Pl.'s Ex. 5 at ¶ 9.

mination that the already approved PS & E contained no mistakes. In addition, the original PS & E did not contain a condition precedent permitting the rejection of bids based upon an incomplete traffic control note. Based on the foregoing, it appears that the federal defendants' conduct was indeed contrary to applicable federal law.

■■■■■ The federal defendants propose to the court that future testimony and discoverable documents will demonstrate that the construction sequence is significant, and thus, the omission of the complete traffic control note was material. Under federal law, where a material change exists, then the contract may be the subject of a new procurement. *Hewlett–Packard Co.,* B–245293, Dec. 23, 1991, 91–2 CPD ¶ 576. As such, the court is guided by the following in its determination of materiality. In determining whether a modification is a material change, the GAO has looked for a material difference between the modified contract and the contract originally completed. *CAD Language Systems, Inc.,* B–233756, April 10, 1989, 89–1 CPD ¶ 364. A modification is not considered material where it has no effect or merely a negligible effect on price, quantity, quality or delivery. *See* FAR § 14.405(d)(2); *GEN-TEX Corp.,* B–216724, Feb. 25, 1985, 85–1 CPD ¶ 231; *ProAlarm, Inc.,* COMP.GEN. DEC. B–240137, Sept. 20, 1990, 90–2 CPD ¶ 242 (failure to acknowledge an amendment to the solicitation that increased the amount of time available for performance was a minor informality). In addition, a modification falls within the scope of the procurement if potential bidders would have reasonably anticipated it under the changes clause. *Hewlett–Packard Co.,* B–245293, Dec. 23, 1991, 91–2 CPD ¶ 576. Moreover, where a defect in a solicitation is noted after the bid opening, recompetition is unnecessary unless the defect was so misleading that the bidder or prospective bidder could have won the award but for the deviation. *Independent Metal Strap Co.,* B–231756, Sept. 21, 1988, 88–2

CPD ¶ 576. A solicitation, even if defective in some way, should not be canceled after bid opening if the award under the invitation for bids would meet the government's actual needs and if there is no showing of prejudice to other bidders. *Id.*

Here, the court finds that the incomplete traffic control note was simply immaterial to the overall bid process. It is undisputed that it would be impracticable for any day time work during weekdays as allowed under the incorrect traffic control note because the erection of barriers and other safety devices would have left virtually no time to work before the next "rush hour" period.[12] Pl.'s Ex. 4 at ¶ 14 (Clark Decl. II). In addition, once these barriers and devices are erected it takes additional time to move the asphalt pavement machines, which are kept off-site, into place. *Id.* Moreover, it is undisputed that only 15 percent of the project required lane closures. *Id.* at ¶ 12–13. Thus, Clark Construction contends that there was no confusion regarding when work requiring lane closures could be performed.

Clark Construction also contends that there is no evidence that any bidder was misled. It is undisputed that APAC, the second low bidder, was already performing a construction contract on a related project and was, in fact, performing under the traffic control procedures supposedly omitted from the project plans at issue. Pl.'s Ex. 3 (Bass Decl. at ¶ 6). Clark Construction also points out the fact that the sequence of construction notes on the PS & E clearly indicate that "[n]ight work will be required during the operation." Pl.'s Ex. 1 (Sequence of Construction).

■■■■ The federal defendants have offered nothing more than unsupported assertions in an attempt to refute the immateriality of the traffic control note. In fact, these statements do not appear in affidavit form, but rather appear as unsupported factual assertions in the federal defendant's brief.[13]

---

12. The plaintiff's representation to the ADOT regarding the practicality of closing traffic lanes on weekdays is independently supported by the declarations of Henry T. Hagood, the Executive Vice President of the Alabama Branch of the Association of General Contractors, and Roger Bass, the President of Dunn Construction Company. *See* Pl.'s Ex. 3; Pl.'s Ex. 5.

13. In their response to Clark Construction's motion for summary judgment, the federal defendants state that they "expect[] to present testimony from APAC and Alabama Bridge Builders, Inc., that the construction sequence is significant, is a matter affecting all bidders and their respective bids, and that the State was correct in rejecting all bids. Additionally, [the federal de-

Hence, no citations to the record or evidence accompany these statements, as required by Rule 56 of the *Federal Rules of Civil Procedure.*[14] Self-serving statements of fact in a party's brief, not in proper affidavit form, may not be considered in determining if a genuine issue of material fact exists. *Soles v. Board of Commissioners,* 746 F.Supp. 106, 110 (S.D.Ga.1990) (citing *Sims v. Mack Truck Corp.,* 488 F.Supp. 592 (E.D.Pa.), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980); *Tunnell v. Wiley,* 514 F.2d 971 (3d Cir.1975)).

 At this point, the court acknowledges the need to address the federal defendants' assertion that Clark Construction's motion for summary judgment is inappropriate since there is outstanding discovery. On the one hand, the federal defendants argue that additional discovery is needed for them to properly respond. The federal defendants stated so in their response, filed September 18, 1995. As yet, the federal defendants have failed to submit any evidence supporting their bald assertions despite the fact that they have had over six months to do so. Even more astonishing, the federal defendants filed a motion, on March 1, 1996, to stay discovery pending the resolution of the motions for summary judgment.[15] Frankly, the court is bewildered by the federal defendants' response that summary judgment is procedurally premature.

The court also agrees with Clark Construction's contention that, if additional discovery was needed, then the federal defendants should have filed a Rule 56(f) motion. *See* Pl.'s Reply in Supp. of Mot. for Summ.J. at 6–12. Furthermore, the federal defendants should have submitted affidavits explaining the unavailability of summary judgment evidence, but did not. *See Reese v. Anderson,* 926 F.2d 494, 499 (5th Cir.1991); *Robbins v.*

*Amoco Production Co.,* 952 F.2d 901, 907 (5th Cir.1992) ("To preserve a complaint of inadequate opportunity to conduct discovery, the party opposing a motion for summary judgment must file a [Rule 56(f) ] motion and non-evidentiary affidavits pursuant to Fed. R.Civ.P. 56(f), explaining why it cannot oppose the summary judgment motion on the merits."). In any event, the federal defendants have had more than ample time, *i.e.* over six months, to conduct the needed discovery. Hence, the court can find no justification in the federal defendants' contention that Clark Construction's motion for summary judgment is premature.

The court is also persuaded that the relative price parity of the four bids during the first letting demonstrated that all the bidders had a common understanding of the requirement of night work and traffic control restrictions. More importantly, there was no bid protest regarding the PS & E. In fact, none of the bidders have indicated that they were prejudiced or misled. Furthermore, federal acquisition regulations specifically provide that a bid solicitation "must describe the requirements of the government clearly, accurately, and completely." 48 C.F.R. § 14.101(a). Therefore, if the traffic control note regarding lane closures was so critical to the integrity of the bidding process, then the FHWA would have certainly corrected the problem long before it gave its approval. *See Clark I* at 1491.

The court also believes that the conduct of the ADOT following the discovery of the mistake tends to refute the FHWA's contention that the PS & E was of no material use. *Id.* (identical analysis). The ADOT was obviously satisfied that the PS & E error was not significant enough to call into question the overall reliability of Clark Construction's bid.

---

fendants] expect to show that the notation of required night work on the Plan Sheets in the Bid Proposal only applies to one section of the project." Fed.Def.s' Resp. at 9.

**14.** In federal court, a plaintiff may not merely "rest on its pleadings" and survive summary judgment. Rule 56(e) states in part:

When a motion for summary judgment is made and supported as provided in this rule, **an adverse party may not rest upon the mere**

**allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.**

Fed.R.Civ.P. 56(e) (emphasis added).

**15.** The court entered a stamped-order on March 20, 1996, denying said motion.

As the federal defendants point out, the ADOT had the power to initially reject Clark Construction as its proposed awardee if it truly believed that the omission affected the overall integrity of the bid. *See* Ala.Code § 39–2–6. Yet, the ADOT did not choose to exercise its power to do so, and, as stated above, the federal defendants did not originally have the power to do so. Based on the foregoing, there was no reasonable basis upon which the FHWA could, *sua sponte,* reject the award and demand that the ADOT correct the plans and readvertise the project. In fact, to do so was contrary to applicable law. Accordingly, Clark Construction has succeeded on the merits against the federal defendants.

 Notwithstanding the foregoing, the court finds that the federal defendants have not violated Clark Construction's due process rights under the Fifth Amendment. "Property interests are not created by the [United States] Constitution but are 'defined by existing rules or understandings that stem from an independent source such as state law' and arise only where the plaintiff demonstrates a 'legitimate claim of entitlement.'" *Polenz v. Parrott,* 883 F.2d 551, 555 (7th Cir.1989) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). This legitimate claim of entitlement is more than "an abstract need or desire for a particular benefit." *Urban Sanitation Corp. v. City of Pell City,* 662 F.Supp. 1041, 1045 n. 8 (N.D.Ala. 1986) (citing *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). In fact, "[w]hile [the] absence of a contractual right to employment does not preclude the existence of a property interest, [a] plaintiff must show a mutually recognized entitlement, as opposed to a unilateral expectation of a benefit, to establish the existence of a property interest." *Id.* (citations omitted).

Clark Construction contends that it has a property right because the Supreme Court of the United States has held that a statutory right to participate in, and receive the benefits from, a federally funded program constitutes a property right under the due process clause of the Fifth Amendment to the United States Constitution. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see also Mount Sinai Med. Ctr. v. Mathews,* 425 F.Supp. 5 (S.D.Fla.1976). The above-cited cases, upon which Clark Construction relies, concern property interests in continued receipt of welfare benefits, social security benefits or medicare payments when a plaintiff has previously been determined to meet the statutory criteria. Here, though, the court finds that the unilateral expectation on the part of an applicant, i.e. Clark Construction, to be awarded a construction project does not create an entitlement. *See generally Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717 (1979); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Essentially, the court believes that Clark Construction's right to be awarded the construction project at issue does not rise to the level of a protected property interest.

 Before addressing the contentions against Mr. Butts, the court will elaborate on the federal defendants' claim that their decisions are not subject to review because the ADOT ultimately exercised its broad discretion and rejected the bids from the first let. The court rejects this argument and reemphasizes its findings in *Clark I* concerning this issue. *See Clark I* at 1492. The FHWA cannot hide in the shadow of the ADOT and claim that its decisions are immune from judicial review where the FHWA forced the ADOT to exercise its power or lose federal funding for the project. In this case, the FHWA took affirmative actions. The FHWA's decision to withhold approval is what gave rise to this action, and the court's power to impose an equitable remedy is not thwarted by this administrative sleight of hand. As the Eleventh Circuit pointed out, "[a] District Court also has the authority to order a government contracting officer to award a contract to an unsuccessful bidder where it is clear that but for the unlawful conduct of the contracting officer, the contract would have gone to the unsuccessful bidder." *Choctaw Mfg. Co. v. United States,* 761 F.2d 609, 620 (11th Cir.1985).

Moreover, as earlier stated, bid solicitations "must describe the requirements of the government contract clearly, accurately, and

completely." 48 C.F.R. § 14.101(a). Clark Construction complied with the PS & E and the defendants' mistake in presenting the PS & E should not be used to penalize Clark Construction, which complied with all applicable federal and state laws. Therefore, in this case, it appears clear that Clark Construction would have received the contract in question were it not for the unlawful conduct of the federal defendants. Consequently, the court finds as it did in *Clark I* that the ADOT's ultimate decision to resolicit bids as directed by the FHWA does not bar equitable relief.

### ii. State Defendant

The court will next address whether Clark Construction has shown success on the merits against Mr. Butts, *i.e.*, the State of Alabama, and in doing so the court addresses Mr. Butts' motion for summary judgment. Clark Construction alleges that Mr. Butts violated 42 U.S.C. § 1983, which accords private citizens recourse in the wake of constitutional deprivations carried out by individuals acting under the color of state law.[16] Specifically, Clark Construction alleges violations of its rights under the due process clause of the Fourteenth Amendment as protected by 42 U.S.C. § 1983.

▆▆▆ At the outset, the court notes that a § 1983 claim is predicated on two indispensable elements:

> First, the conduct complained of must have been committed by a person acting under state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.

*Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir.1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). Here, the court finds that Mr. Butts was acting under color of state law at all material times. As such, the court will next address whether Clark Construction has shown that it was deprived of any right protected by the Constitution.

▆▆ In order to establish a due process claim under 42 U.S.C. § 1983, Clark Construction must show that it had a property interest which has been abridged without adequate due process. *Roth*, 408 U.S. at 569, 92 S.Ct. at 2705. As previously stated herein, "[p]roperty interests are not created by the [United States] Constitution but are 'defined by existing rules or understandings that stem from an independent source such as state law' and arise only where the plaintiff demonstrates a 'legitimate claim of entitlement.'" *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir.1989) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). This legitimate claim of entitlement is more than "an abstract need or desire for a particular benefit." *Urban Sanitation Corp. v. City of Pell City*, 662 F.Supp. 1041, 1045 n. 8 (N.D.Ala.1986) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). In fact, "[w]hile [the] absence of a contractual right to employment does not preclude the existence of a property interest, [a] plaintiff must show a mutually recognized entitlement, as opposed to a unilateral expectation of a benefit, to establish the existence of a property interest." *Id.* (citations omitted). Moreover, the foregoing directs the court to state law to determine the sufficiency of the claim of entitlement. *DRT Mechanical Corp. v. Collin County*, 845 F.Supp. 1159, 1161 (E.D.Tex.1994) (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)).

Mr. Butts contends that Alabama law is clear that a property right does not exist under the circumstances presented here. In support thereof, Mr. Butts' points the court to § 39-2-6(a) of the *Code of Alabama*, which provides in part:

> The contract shall be awarded to the lowest responsible bidder complying with conditions of the invitation for bids, unless the awarding authority finds that his bid is unreasonable or that **it is not to the inter-**

---

16. Section 1983 provides in relevant part that:
 "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured...."
 42 U.S.C. § 1983.

est of the awarding authority to accept it.

Ala.Code § 39–2–6(a) (emphasis added). Mr. Butts also contends that Clark Construction's claim of a § 1983 violation must fail because all contracts let for bids by the State of Alabama are bound by standard specifications which provide in pertinent part: "The right is reserved to reject any or all proposals, to waive technicalities or to advertise for new proposals, if in the judgment of the awarding authority, the best interest of the Department will be promoted thereby." Alabama Standard Specification, § 103.01. Mr. Butts contends that this standard employed by the ADOT gives effect to the broad statutory authority in § 39–2–6.

Clark Construction relies in part on *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980), wherein the court concluded, after considering Pennsylvania law, that a bidder for a local cable franchise had a constitutionally protected property interest and "that [the] interest was the right of the lowest responsible bidder in full compliance with the specifications to be awarded the contract once the City in fact decided to make an award." *Id.* at 1131. However, this argument has already been rejected by a federal district court applying Alabama law. The court in *Urban Sanitation Corp. v. City of Pell City*, 662 F.Supp. 1041 (N.D.Ala.1986), disagreed with *Three Rivers* "to the extent that [*Three Rivers* ] suggest[s] that all unsuccessful competitive bidders have a protected property interest...." 662 F.Supp. at 1046. More importantly, the court in *Urban Sanitation* concluded that unsuccessful bidders for contracts of certain state and local agencies for which competitive bidding is required, as here, do not have a constitutionally protected property interest resulting from Alabama law. *Id.* at 1046.

Accordingly, the court finds that there is no indication that Clark Construction had any right or expectancy to insist upon the award of this contract from the ADOT. The court believes that this finding is consistent with the Supreme Court of Alabama's determination that " '[t]he Competitive Bid Law

does not require that the lowest bid be accepted....' " *Id.* at 1044 (quoting *International Telecommunications Sys. v. State of Alabama*, 359 So.2d 364, 366 (Ala.1978)). Consequently, because Alabama law does not create an entitlement to the benefits at issue, the court finds that Clark Construction does not have a property interest to be awarded the contract under state law.

Clark Construction also contends that it has a property right regarding the ADOT's actions because the Supreme Court of the United States has held that a statutory right to participate in, and receive the benefits from, a federally funded program constitutes a property right under the due process clause of the Fourteenth Amendment to the United States Constitution. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see also Mount Sinai Med. Ctr. v. Mathews*, 425 F.Supp. 5 (S.D.Fla.1976). The court rejects this contention. The court has previously found that the unilateral expectation on the part of a would-be recipient, *i.e.* Clark Construction, to be awarded a construction project under 23 U.S.C. § 112(b)(1) does not create an entitlement. *See supra* p. 1485; *see generally, Leis v. Flynt*, 439 U.S. 438, 442, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717 (1979); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

In addition to alleging the above-mentioned due process violation, Clark Construction contends that the ADOT violated its federal statutory rights under the color of state law by arbitrarily and capriciously rejecting Clark Construction's bid and resoliciting the project. The court believes that Clark Construction is referring to Count VI of its amended complaint, filed May 30, 1995.[17] Clark Construction asserts that it was entitled to the contract award because it was the "lowest responsible bidder" pursuant to the Federal Highway Act and the regula-

---

17. The court notes the confusion created by the "arbitrary and capricious" language in this assertion. Count V mentions such language but *is* entitled as alleging a violation of the Alabama Competitive Bid Law. However, in this conten-

tion, Clark Construction is alleging violations of federal statutory rights. Hence, the court presumes that Clark Construction is referring to Count VI of its amended complaint which discusses violations of federal statutory law.

tions promulgated thereunder. As such, Clark Construction contends that the ADOT violated the Federal Highway Act by reletting the bids rather than awarding the project to Clark Construction. In support thereof, Clark Construction points to 23 U.S.C. § 112(b)(1) of said Act, which, as previously set forth, provides that federal aid construction projects are to be awarded "only on the basis of the lowest responsive bid...." Moreover, § 112(b)(1) states that **"no requirement or obligation shall be imposed as a condition precedent to the award of a contract** ... **or the Secretary's concurrence in the award** ... **unless such requirement or obligation** ... **is specifically set forth in the advertised specifications."** (emphasis added).

It is undisputed that the ADOT rejected all bids and resolicited the project, which, as determined *infra,* resulted in an impermissible auction, based **solely** on the fact that if they did not resolicit the project, the ADOT would forfeit over eight million dollars in federal highway funds. *See supra* p. 4; Pl.'s Ex. 12 at ¶ 6 (Declaration of Butts dated May 18, 1995); Declaration of Butts dated June 2, 1995 at ¶ 13 (attach. to federal def.s' reply); Pl.'s Ex. 7 (Internal e-mail memo from Wilkerson to Larson). Although the FHWA's decision to withhold approval is what gave rise to this action, the ADOT clearly did not act within the guidelines of § 112(b)(1). Such action not only violates federal law but is also clearly inequitable.

The court sympathizes with the ADOT's position that the FHWA forced it to act as it did. If the ADOT has acted otherwise, it most likely would have lost federal funding for the project, which quite possibly Alabama could not fund. In fact, if the ADOT had awarded the project to Clark Construction without the concurrence of the FHWA, it would have violated 23 U.S.C. § 112(d), which provides:

> No contract awarded by competitive bidding pursuant to subsection (b) of this section, and subject to the provisions of this section, shall be entered into by any State highway department or local subdivision of the State without compliance with the provisions of this section, and without the prior concurrence of the Secretary in the award thereof.

23 U.S.C. § 112(d). However, this does not excuse the ADOT's blatant disregard of § 112(b), which strikes at the very heart of competitive bidding. *See, infra* discussion of "impermissible auction" at pp. 38–40.

■ In his brief in opposition to summary judgment, Mr. Butts adopts the federal defendants' discussion set forth in their respective brief on the highly deferential standard employed by the Supreme Court of Alabama in the context of public agency contract administration decisions. The defendants contend that the arbitrary and capricious standard mentioned by Clark Construction is the wrong standard of review. Because the defendants' briefs place such great emphasis on the appropriate standard, the court will address the appropriate standard and its application here. The Supreme Court of Alabama does follow a highly deferential standard in the context of public agency contract administration decisions. The Eleventh Circuit has addressed the standard in *Advance Tank & Construction Co. v. Arab Water Works,* 910 F.2d 761 (11th Cir.1990). Therein, the court analyzed Alabama case law and succinctly summarized the law as follows:

> The [Alabama Supreme Court] decisions suggest that a court should make two distinct inquiries: it should determine whether the decision to reject the apparent low bidder resulted from (1) a decision process tainted by improper influence or fraud, or (2) gross negligence in arriving at the decision.

*Id.* at 765. Moreover, the court further recognized that the Supreme Court of Alabama has "refined the arbitrary and capricious test into several sub-questions, stating that a court should not interfere with the discretion of public contracting authorities in determining who is the lowest 'responsible bidder' unless the decision was (1) 'based upon a misconception of the law,' (2) a 'result of improper influence,' (3) made in 'violation of law,' or (4) based 'upon ignorance through lack of inquiry.'" *Id.* (quoting *White v. McDonald Ford Tractor Co.,* 287 Ala. 77, 248 So.2d 121, 129 (1971)). The court in *Advance Tank* also noted that "'[t]he single most important requirement of the Competitive

Bid Law is the good faith of the officials charged in executing the requirements of the law.'" *Id.* (quoting *McDonald*, 248 So.2d at 129) (citations omitted). Moreover, "the Alabama legislature passed the Competitive Bid Law not for the benefit of an unsuccessful bidder, but for the protection of the public." *Id.* (citing *Townsend v. McCall*, 262 Ala. 554, 80 So.2d 262, 265 (1955); *Carson Cadillac Corp. v. City of Birmingham*, 232 Ala. 312, 167 So. 794, 798 (1936); *Urban Sanitation Corp. v. City of Pell City*, 662 F.Supp. 1041, 1043 n. 3, 1044 (N.D.Ala.1986), *aff'd*, 823 F.2d 556 (11th Cir.1987)) (footnote omitted) (bracket added).

However, here, the court is not concerned with whether the ADOT violated the Alabama Competitive Bid Law because, as previously determined, the Eleventh Amendment bars such an action. Rather, the court is only concerned with whether the ADOT violated federal law. Hence, this deferential standard does not apply in this case. However, even if the court were to apply such a deferential standard, the result is the same because the ADOT made a decision "in violation of law."

The ADOT should have recognized that its decision to resolicit the bids would create an impermissible auction, thereby undermining the public's faith not only in the bidding process but in the ADOT itself. Clearly, the ADOT should have appealed the Montgomery Federal Highway Administration Office's decision to the Regional Federal Highway Administration in Atlanta. *See* Pl.'s Ex. 8 (Letter from C. Clark to R.W. Pickett, Jr. dated Jan. 26, 1995). However, the ADOT, like the FHWA, blatantly disregarded § 112(b)(1). Accordingly, Clark Construction has succeeded on the merits against the state defendant, Mr. Butts.

### iii. Impermissible Auction—State and Federal Defendants

■ Before proceeding to the remaining requirements for a permanent injunction, the court turns to Clark Construction's argument that it is entitled to injunctive relief because the defendants' decision to resolicit bids created an "impermissible auction" situation for which there was no rational basis. As the stated in *Clark I*, the court finds that this assertion has merit. *See Clark I* at 1492.

As represented in this case, the process of awarding federal contracts is a complicated one. Mistakes and unintended omissions are very often a part of that process. However, the competitive system under which contractors of all sizes submit sealed bids would not be able to survive if the respective agency defendants were allowed to cure all of their mistakes by constantly resoliciting bids. To allow the defendants to do so without clear legal authority would inject a level of uncertainty into the bidding process that would eventually cause irreparable harm.[18]

The facts of this case provide an excellent example of why the policy of submitting sealed bids is so critical. When the ADOT solicited the first round of bids in December of 1994, all potential bidders were privy to the same information and in a position to submit their most honest and competitive bids. Based on the evidence, Clark Construction's original bid was the lowest responsible bid and complied with every requirement in the PS & E. After the original bids were opened and Clark Construction's bid was originally selected by the ADOT, the amount of Clark Construction's winning bid became public and thus known to all its competitors. The court finds that the afore-

---

**18.** Henry T. Hagood, Executive Vice President of the Alabama Branch of the Association of General Contractors, reflected the following, which the court finds highly persuasive: "I am aware of no government contract that has not required change orders to accommodate changing circumstances, mistakes or unanticipated events. Immaterial issues such as lane closures ordinarily and routinely require simply a change order, not the resolicitation of the entire project." Pl.'s Ex. 5. The court is also persuaded by Mr. Hagood's following concerns:

If minor issues are permitted to require a resolicitation, then every disgruntled bidder

will be able to force a resolicitation after the opening of bids by identifying a minor issue such as a lane closure issue. That is, after a [sic] losing a bid, a contractor or government entity could point to a minor error in the plans and demand a resolicitation. If the government is forced to resolicit under such circumstances, an improper auction will occur defeating the purpose of the Alabama Competitive Bid Law. This will establish a harmful precedent and create endless construction delays. *Id.*

mentioned solicitation was the only legitimate competitive solicitation held for this contract.

The second round of bids conducted after the rejection of Clark Construction's bid constitutes an impermissible auction. The second solicitation occurred in an environment where Clark Construction's original winning bid was made public. Thus APAC, the winner of the second solicitation, knew the bid ceiling, and accordingly, bid substantially below Clark Construction's original bid. The court theorizes that APAC was able to submit such a low bid in part because it is a much larger company than Clark Construction and has more financial resources at its disposal.

Large companies will almost always have the ability to under bid a smaller firm whose original low bid has become a "price ceiling." The defendants in this case cannot possibly claim in all candor that they expected the addition of the traffic control note in the PS & E to cause bids to increase. The fact that a second let prompted APAC to reduce its bid by $659,964.82 is a clear indication of why the system of submitting sealed bids should not be disturbed lightly. The fact that it was disturbed for the reasons given in this instance is, in the court's opinion, irrational.

*iv. Conclusion—Success on the Merits*

Based on the foregoing, the court finds that no fair-minded person in the exercise of impartial judgment could reasonably infer from the undisputed evidence that the ADOT or the FHWA did not violate 23 U.S.C. § 112(b)(1). In addition, the defendants' conduct resulted in an "impermissible auction" for which there was no rational basis. Consequently, a genuine issue of material fact does not exist. Since no reasonable person could find the ADOT or the FHWA's actions lawful in deciding to resolicit the bids, the court finds that Clark Construction has shown success on the merits.

**B. Irreparable Injury**

The party moving for permanent injunctive relief also must show irreparable injury. The court has already discussed the law relevant to this requirement and need not repeat it here. *See supra* p. 1478. However, the court does reiterate that if the damages are calculable in money, then the injury is not irreparable. *Collins & Co., General Contractors, Inc. v. Claytor,* 476 F.Supp. 407, 410 (N.D.Ga.1979). In *Claytor,* the court stated that "the principal and overriding element of this prerequisite is irreparable harm resulting from the absence of an adequate remedy at law." *Id.* (citations omitted). Hence, the doctrine that the legal remedy must be inadequate before equity will act is inextricably intertwined with the irreparable injury element.

As set forth previously in this opinion and determined in *Clark I,* the court finds that Clark Construction lacks an adequate remedy at law. *See supra* p. 1478; *see also Clark I* at 1493. Therefore, the absence of a permanent injunction will result in irreparable harm to Clark Construction. Consequently, the court finds that Clark Construction has met its burden of proving irreparable injury.

**C. Plaintiff's Irreparable Injury Outweighs Any Harm to the Interested Parties**

The court also reiterates, now in the permanent injunction context, its earlier finding in *Clark I* that the harm that will be caused to the defendants by the granting of a permanent injunction is outweighed by the irreparable injury that Clark Construction and similarly situated contractors will suffer if injunctive relief does not issue. *See Clark I* at 1493. The court is mindful of the fact that a permanent injunction may even cause additional delay in the completion of the overall Highway 280 construction project. However, as stated in *Clark I,* the court finds that such a delay is necessary where the need to impose an equitable remedy is so apparent.

**D. Public Interest**

As stated in *Clark I,* the public interest factor is generally an elusive one in that opposing parties can often make reasonable arguments that the public interest favors each side of the dispute. *See Clark I* at 1493–94. In this case, the defendants make a compelling argument that the public is best served when they are allowed to exercise their administrative discretion with little in-

terference from the courts. Usually, the court would be inclined to agree. In fact, the court found that the Administrative Procedures Act and the Alabama Competitive Bid Law allow virtually no other interpretation. However, in this instance involving the defendants, the court finds that the public would be ill-served if the court sent the message to future low bidders that their chances of obtaining a government contract are largely dependent upon whether the defendants have refrained from making careless mistakes of questionable importance. In fact, if the court were to find otherwise in this case, it would be allowing the defendants to violate 23 U.S.C. § 112(b)(1) at will, essentially rendering the statute meaningless. For these reasons, the court finds that the public's right to have government contracts solicited in a proper manner outweighs any administrative inconvenience or additional cost that the defendants might incur.

## IV. *Declaratory Judgment*

█ Clark Construction requests the court to declare that: (1) the respective and joint actions of the FHWA and the ADOT were arbitrary, capricious, illegal and in violation of federal, constitutional and state law; and (2) the contract in question should be awarded to Clark Construction as the low responsible bidder. The ability of the court to declare the rights and respective duties of the parties is well established. The Federal Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction.... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief could be sought.

28 U.S.C. § 2201(a). As the above-quote sets forth, in order for a declaratory judgment to be granted, an "actual controversy" must exist. *Id.* Hence, in upholding the Declaratory Judgment Act, the Supreme Court of the United States has emphasized that the statute does not permit advisory opinions because it limits federal court action to justiciable cases. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

█ In determining whether an actual controversy exists, courts ascertain whether there is, in fact, a substantial controversy "between parties having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment." *Evers v. Dwyer,* 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958); *Sears, Roebuck & Co. v. Buce,* 197 F.Supp. 136 (M.D.Ala.1961). Disputes of a hypothetical or abstract character do not rise to the level of an actual controversy. *Public Service Comm. of Utah v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Essentially, this analysis consists of determining whether the case is ripe. As such, the court is guided by the Supreme Court's determination that ripeness essentially involves two factors: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

█ The court finds that an actual controversy exists which necessitates a declaration by the court of the parties' respective rights. Clark Construction and the defendants clearly have adverse legal interests. For instance, Clark Construction contends that the defendants exceeded their authority and acted illegally in depriving Clark Construction of the contract. The defendants, on the other hand, argue that they are empowered to reject the lowest responsible bidder on the basis of an incomplete traffic control note. Similarly, for the reasons stated in Clark Construction's brief supporting summary judgment, the court finds that this dispute is immediate and not stale. *See* Pl.'s Mot. for Summ.J. at 29. In fact, the court's previous discussion of the potential injury Clark Construction would suffer without action by the court demonstrates not only "the fitness of the issues for judicial decision" but also "the hardship to the parties of withholding court consideration."

The court is also concerned by the fact that the defendants' actions can easily be repeated, and thus, a declaration of the respective rights and obligations of the parties will advise future bidders of their rights. In fact, Henry T. Hagood, the Executive Vice

President of the Alabama Branch of the Association of General Contractors, contends that much confusion has arisen that shall adversely effect the government contracting industry because of the finger-pointing between the ADOT and the FHWA officials. Hence, a declaration of the respective rights of the parties in this action will delineate for future bidders what is considered proper conduct by the federal and state governments charged with overseeing contract awards under the Federal Highway Act.

██ Therefore, consistent with the foregoing discussions, the court declares that the ADOT and the FHWA's actions violated 23 U.S.C. § 112(b)(1). Hence, the FHWA should have concurred in the original award of the contract to Clark Construction. In addition, the State of Alabama should not have resolicited the bids, even though the FHWA essentially left the State no other choice. Both the ADOT and the FHWA set a requirement, *i.e.* the omitted traffic control note, as a condition precedent to the award of the contract which was not specifically set forth in the advertised specifications. Because it is undisputed that the omitted traffic control note was immaterial, the defendants lacked the authority to subject the contract to a new procurement. Based on the foregoing reasons, the court finds that the defendants violated 23 U.S.C. § 112(b)(1).

## CONCLUSION

For the foregoing reasons, the ADOT and the FHWA are enjoined from concurring in or approving the award of Alabama Project MAAF–DBAAF–214(37) to any company other than Clark Construction. In fact, the ADOT **must** resubmit Clark Construction's original bid and the FHWA **must** concur and/or approve said bid.[19] Accordingly, the court finds that Clark Construction's motion for summary judgment is due to be granted. The court further finds that Mr. Butts' motion for summary judgment is due to be denied. A judgment in accordance with this

memorandum opinion will be entered separately.

19. It is ironic that the State of Alabama is herein enjoined from conduct in which it did not wish to participate but was nevertheless forced to do so by the federal government. It should also be noted that this opinion and the entry of a permanent injunction vindicates the original position taken by the State of Alabama.